In the Interest of **DOE CHILDREN**, John Doe, Born on December 22, 1974; Jane Doe, Born on December 22, 1974

NO. 14868

(FC–S NO. 89–1417)

and

**In the Interest of DOE CHILDREN**, John Doe, Born on December 22, 1974; Jane Doe, Born on December 22, 1974

NO. 15370

(FC–S NO. 89–1417)

MARCH 3, 1992

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

16

OPINION OF THE COURT BY WAKATSUKI, J.

Appellant, the Department of Human Services (DHS), appeals a family court order directing Appellant to pay foster board payments to the relative caretakers of the children, John Doe and Jane Doe (Doe children), pursuant to Hawaii Revised Statutes (HRS) § 587–2. We affirm.

I.

On March 23, 1988, after initiating child protective proceedings under Chapter 587, HRS, DHS was awarded temporary foster

custody of the Doe children. DHS placed these children with their paternal aunt and uncle on April 1, 1988. On April 6, 1988, DHS was awarded foster custody. (DHS was not awarded permanent custody until about a year later.)

At a hearing on July 11, 1990, the family court ordered DHS to make foster board payments to the foster parents, the paternal aunt and uncle, in accordance with its duties under HRS § 587–2. HRS § 587–2 states in relevant part:

(1) Foster custody vests in a foster custodian the following duties and rights:

(A) To determine where and with whom the child shall be placed . . . .

(B) To assure that the child is provided in a timely manner with adequate food, clothing, shelter, psychological care, physical care, medical care, supervision, and other necessities[.]

The family court found that:

29. *DHS asserts that its rules regarding foster board payments provide that foster board payments are not paid to foster parents who are relatives of children under the foster custody of DHS.* (Emphasis added.)

. . . .

31. DHS asserts that where DHS is the permanent custodian of a minor, DHS's policy is to pay the minor's custodian regular payments equal to foster board payments regardless of whether the custodians are related to the minor.

32. DHS asserts that it pays an amount equal to foster board payments to custodians of a minor who become legal guardians of the minor regardless of whether the legal guardians are related to the minor.

33. *Thus, DHS treats relative and non–relative caretakers of minors the same in terms of making*

*monthly payments equal to foster board payments when the caretakers are permanent custodians or legal guardians of minors.* (Emphasis added.)

34. *The only time DHS treats relative caretakers of minors differently than non–relative caretakers of minors is when DHS has foster custody of the minor.* (Emphasis added.)

III.

On appeal, DHS argues that the family court erred in ordering payment by concluding that the DHS rules fail to satisfy its statutory obligation under HRS § 587–2, denying the children their right to substantive due process, and violating equal protection guarantees of the United States and Hawaii Constitutions. We disagree.

DHS derives its authority to promulgate rules regarding the care of children in its foster custody from HRS § 587–2. However, DHS asserts that the family court order to make foster board payments to relative caretakers is in violation of these rules. Specifically, DHS Administrative Rules § 7–828–2 defines a foster child as "any child under eighteen years of age who is not related to the foster parent by blood, marriage, or adoption and who is in need of substitute parenting care; . . . ." *See also* DHS Administrative Rules § 17–890–1. Based on this definition, DHS asserts that the Doe children were not "foster children" because the Doe children were placed with relative caretakers, their paternal aunt and uncle.

Further, the DHS definitions of "foster parent" and "foster family boarding home" both make reference to this same definition of "foster child." DHS Administrative Rules § 17–828–2 states in relevant part:

"Foster family boarding home" means a home providing family care to minor *foster children* apart from the parents or guardian on a twenty–four hour basis and

which has met the state licensing requirements. (Emphasis added.)

"Foster parent" means any adult person who gives parenting care and maintenance to a *foster child*. (Emphasis added.)

*See also* DHS Administrative Rules § 17–890–1. Therefore, under DHS definitions, the paternal aunt and uncle of the Doe children could not be "foster parents," nor could the group living situation be certified as a "foster family boarding home." Thus, according to DHS, relative caretakers do not qualify for payments under DHS Administrative Rules § 17–828–6(d), which states that DHS "shall make board payment directly to the foster boarding home parents, . . . ."

In *Puana v. Sunn*, 69 Haw. 187, 737 P.2d 867 (1987), this court held that the authority of the DHS (formerly the Department of Social Services and Housing) is "limited to enacting rules which carry out and further the purposes of the legislation and to not enlarge, alter, or restrict the provisions of the act being administered." (Citations omitted.) *Id.* at 189, 737 P.2d at 870. In *Puana*, the DHS was within its authority under HRS chapter 346 to adopt a rule disqualifying an individual from receiving general assistance benefits for nine months after receipt of a lump sum payment from another source, such as his employer's temporary disability insurance. *Id.* Such a rule reasonably carried out the legislative purpose of "ensuring that only those persons without adequate income or resources to live at the minimum monthly needs level receive[d] assistance." *Id.* However, another part of those DHS rules was held invalid for failing to provide a shortened disqualification period when changes in financial need occurred.

In the present case, DHS has selected foster board payments as a method of meeting its statutory obligation under HRS § 587–2. However, its administrative rules and policies have imposed restrictions which are not present in the statute and are contrary to

the statutory purpose to assure that the childrens' basic needs are met. "Statutory language must be read in the context of the entire statute and construed in a manner consistent with the purposes of the statutes." (Citations omitted.) *Pacific Ins. Co. v. Oregon Auto. Ins. Co.*, 53 Haw. 208, 212, 490 P.2d 899, 902 (1971). HRS § 587–2 does not relieve DHS of its duties to provide for the needs of the children taken into its custody on the basis of the childrens' relationship to the foster parents.

DHS contends that it has fulfilled any obligation it might have had under HRS § 587–2, as it only had to "assure" that those in its custody are provided with "adequate" care. It is true that the relative caretakers here qualified for other assistance, such as Medicaid and Aid to Families with Dependent Children (AFDC), and that DHS made some small direct payments to the relative caretakers for food and clothing. Yet, DHS conceded that it still would not have provided foster board payments even if the relative caretakers had received no other financial aid. At the same time, the DHS rules would entitle a non–relative caretaker to foster board payments even if that caretaker were independently wealthy. Quite obviously, the needs of these children do not vary according to whether or not their foster parents are relatives or non–relatives. Thus, it is inconceivable how the DHS rules could serve to further the purpose of HRS § 587–2.

Also, DHS contends that it cannot provide payments to parties who are not foster parents because the legislature only budgeted funds for foster board payments to be made to foster parents. However, it is DHS' own definition of "foster child" and "foster parent" that limits the payments.

Further, when DHS assumes foster custody, it has an obligation to make certain that children in its custody are adequately cared for in a suitable home environment. The legislature has stated a clear preference for keeping families together if possible where the difficulties being faced by the family can be resolved.

HRS § 587–1 describes the general objectives governing the chapter:

> This chapter creates within the jurisdiction of the family court a child protective act in order to safeguard, treat, and provide permanent planning for children who have been harmed or threatened with harm.
>
> . . . .
>
> The policy and purpose of this chapter is to provide children with prompt and ample protection from the harms detailed herein, with an opportunity for timely reconciliation with their families where practicable, and with timely and permanent planning so they may develop and mature into responsible, self–sufficient, law–abiding citizens. This permanent planning should *effectuate placement with a child's own family when possible . . .* where return to the child's family is not possible as provided in this chapter, such children will be promptly and permanently placed with responsible, competent, substitute parents and families . . . . (Emphasis added.)

When DHS fails to provide relative caretakers with the foster board payments paid to non–relative caretakers, such a policy, in effect, discourages relatives from becoming caretakers. This is contrary to the stated purpose of the chapter which places an emphasis on maintaining the family unit. Rather, it seems consistent with this purpose to encourage placement with relative caretakers who may help to preserve a sense of family identity for the foster child.

Clearly, the rules promulgated by DHS have created distinctions which are not present in the statute. Under these rules, DHS' execution of its duties as a foster custodian is inconsistent with the legislative intent and purpose of HRS § 587–2. We, therefore, conclude that the DHS rules which do not provide for foster

board payments to relative caretakers are invalid and unenforceable.

Having reached this conclusion, we need not address appellant's remaining contentions.

Affirmed.

*Jay K. Goss*, Deputy Attorney General (*John Campbell, Jr.*, Deputy Attorney General, with him on the briefs) for Appellant.

*Patrick M. Moscatello* for Volunteer Guardian Ad Litem, Appellee.