**KEKOA D. KAAPU**, Plaintiff–Appellant, v. **ALOHA TOWER DEVELOPMENT CORPORATION** and **ALOHA TOWER ASSOCIATES**, Defendants–Appellees

NO. 15775

(CIV. NO. 90–0831)

FEBRUARY 25, 1993

LUM, C.J., MOON AND LEVINSON, JJ., INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF KLEIN, J., RECUSED, AND RETIRED JUSTICE HAYASHI,* ASSIGNED BY REASON OF VACANCY

---

*Retired Justice Hayashi, who heard oral argument in this case, was unavailable for signature when this opinion was filed. *See* HRS § 602–10 (1985).

OPINION OF THE COURT BY LEVINSON, J.

The plaintiff–appellant Kekoa D. Kaapu (Kaapu) appeals the circuit court's decision and order granting summary judgment in favor of the defendants–appellees Aloha Tower Development Corporation (ATDC) and Aloha Tower Associates (ATA). We affirm.

## I. BACKGROUND

In 1981, the Hawaii legislature found that the Hawaii downtown waterfront area "bounded by piers 8, 9, 10, and

11 and Nimitz Highway, including the Hale Awa Ku Moku Building and Irwin Memorial Park," which it labeled the "Aloha Tower complex" (the complex), was "one of the most valuable properties in downtown Honolulu and that certain portions of this area should be redeveloped, renovated, or improved to better serve the economic, maritime, and recreational needs of the people of Hawaii." HRS § 206J–1 (1985).[1]

Accordingly, the legislature promulgated HRS ch. 206J, Act 236, §§ 1–3, 1981 Haw. Sess. Laws 448–59, for the purpose of establishing "a new public body corporate and politic, public instrumentality, and agency of the State for the purpose of undertaking the redevelopment of the . . . complex" in order "to strengthen the international economic base of the community in trade activities, to enhance the beautification of the waterfront, . . . to better serve modern maritime uses, and to provide for public access and use of the waterfront property." HRS § 206J–1 (Supp. 1992). "Properly developed," the legislature declared, "the . . . complex will further serve as a stimulant to the commercial activities of the downtown business community and help transform the waterfront into a 'people place.' " Id.

Thus was created the ATDC, which, "for administrative purposes," was placed within the State of Hawaii Department of Planning and Economic Development. HRS § 206J–4(a) (1985).[2] The ATDC was empowered,

---

[1] In 1988, the legislature limited the Aloha Tower complex to the waterfront area "including the Hale Awa Ku Moku Building and Irwin Memorial Park." Act 356, § 1, 1988 Haw. Sess. Laws 686–87.

[2] Effective July 1, 1990, the name of the Department of Planning and Economic Development had been changed to the Department of Business, Economic Development, and Tourism, Act 293, §§ 8 and 13, 1990

*inter alia*, to adopt rules pursuant to the Hawaii Administrative Procedure Act (HAPA), HRS ch. 91, in order to effectuate the goals of HRS ch. 206J, to prepare a development plan for the complex, and singly or "in partnership with qualified persons" to develop a project relating to the complex. HRS §§ 206J–5(a)(5), 206J–5(a)(7), and 206J–5(a)(9) (1985 and Supp. 1992). The ATDC was further empowered to lease all or a portion of any developed project[3] "to any qualified person" pursuant to terms conforming with an adopted development plan for the complex and consistent with such "requirements and conditions" as the ATDC established "relating to the terms of [the] lease and the qualifications of any person to draw or bid for the lease." HRS § 206J–11 (1985).[4]

---

Haw. Sess. Laws 642, 648–49, and HRS § 206J–4 was amended accordingly. HRS § 206J–4 (Supp. 1992).

[3] "Project" was defined to mean, in relevant part, "an undertaking of work or improvement of public or private real or personal property or any interest therein, developed, acquired, constructed, reconstructed, rehabilitated, improved, altered, or repaired by the [ATDC], by itself or in conjunction with qualified persons . . . ." HRS § 206J–2 (Supp. 1992).

[4] HRS § 206J–11, as originally drafted, provided in relevant part:
The [ATDC] may lease for a term not exceeding sixty–five years, all or any portion of the real, personal, or mixed property constituting a project to any qualified person, upon such terms and conditions as may be approved by the [ATDC] board, if the board finds that the lease is in conformity with the development plan for the . . . complex. Notwithstanding any other provision to the contrary, the [ATDC] shall establish requirements and conditions relating to the terms of lease and the qualifications of any person to draw or bid for the lease.

HRS § 206J–11 (1985).
As a result of Act 86, § 15, 1990 Haw. Sess. Laws 152, 159, HRS § 206J–11 was amended, *inter alia*, to substitute the language "to apply for such lease" for "to draw or bid for the lease." HRS § 206J–11 (Supp. 1992). The amendment became effective on May 24, 1990. Kaapu has

In accordance with HAPA and HRS § 206J–5(a), the ATDC proposed rules establishing itself as the sole authority for selecting the developer of the complex, fashioning a "request for proposal" (RFP) procedure as the mode of selection, and insuring the confidentiality of the contents of all proposals pending execution of a long–term lease between the ATDC and the selected developer. On December 1, 1988, the ATDC conducted a public hearing to receive testimony regarding the proposed rules. No testimony in opposition to the proposed rules was submitted. Kaapu did not attend the hearing.

On December 22, 1988, the board of directors[5] of the ATDC formally promulgated, as Chapter 15–26, Hawaii Administrative Rules (Department of Business and Economic Development), "Rules of Practice and Procedure" to govern the functioning of the ATDC. Sections 15–26–1 through 15–26–50, Hawaii Administrative rules (Department of Business and Economic Development)[6] (ATDC Rules). The ATDC Rules became effective on February 9, 1989.

ATDC Rule 15–26–1 provides that "[t]his chapter governs procedures before the [ATDC] under [HRS ch. 206J]

---

challenged the retroactivity of the amendment in his appeal, *see* Kaapu's opening brief at 10, but in light of our decision today we need not reach this issue.

[5] The ATDC consists of a board of directors having seven voting members. The composition of the board is prescribed in HRS § 206J–4(b) (Supp. 1992) and consists of the Director of the Department of Business, Economic Development, and Tourism, the Director of the Department of Transportation, the chairperson of the Board of Land and Natural Resources, the Mayor of the City and County of Honolulu (or their respective delegates), and three members of the public at large appointed by the Governor for staggered terms.

[6] Now the Department of Business, Economic Development, and Tourism. *See supra* note 2.

and shall be construed to effectuate the purpose of the chapter and to secure the just and efficient determination of every proceeding."

ATDC Rule 15–26–41, relating to the ATDC's "[a]uthority to select developers," provides in relevant part that "the [ATDC] has sole authority to select any qualified person to be a developer–lessee."

ATDC Rule 15–26–42, relating to the "[s]election process," provides in relevant part that the ATDC "may select qualified persons to develop a development area pursuant to a process of direct negotiation, [an RFP], a competitive bidding process, or a combination of any or all of the above. The [ATDC] shall determine the method for pursuing its objectives . . . ."

ATDC Rule 15–26–44, relating to RFPs, provides in relevant part:

> Should the [ATDC] . . . determine to select a developer for a project through [an RFP], the process shall encompass a publicly advertised [RFP], an evaluation of submitted proposals, selection of a qualified person based upon its submitted proposals, and finally, direct negotiation for a development agreement. The selection process shall be as follows:
>
> . . . .
>
> (5) The RFP shall require that any party interested in being a developer–lessee of the proposed development area shall submit a detailed proposal inclusive of, but not limited to, a description of the developer, its experience and its basic development team, architecturally prepared schematic drawings, proposed

footprints of the buildings, preliminary traffic studies and solutions prepared by certified engineers and designers, feasibility studies, anticipated benefit to the State of Hawaii, and timetable for construction . . . . Each candidate must submit market studies or other satisfactory evidence to support the financial feasibility of its proposal.

(6) . . . [O]nly those parties submitting responses that meet the minimum submission requirements and qualifications as set forth in § 15–26–47 below shall be considered as the potential developer–lessee of the project as described in the RFP. *The contents of any proposals received shall be kept confidential and shall not be distributed in any case to other parties who are participating in the RFP process until after a long term lease and development agreement are executed.*

(7) The [ATDC] . . . shall review all responses to the RFP and may require each party who has submitted a response to make a presentation of its proposal to the [ATDC] . . . . *Because responders may be required to disseminate proprietary or other confidential information during such presentations, the presentations will be limited to members of the [ATDC] board [and] officers of the [ATDC] and their counsel [ ]; and the substance of such presentations shall be kept private and confidential until after a long term lease*

*and development agreement are executed.* The presentations shall be exclusively for purposes of fact–finding and investigation, and in no case shall the [ATDC] board make any decisions or deliberate toward any decision regarding selection of a developer or development proposal at presentation sessions. . . . Failure to enter into a long–term lease and development agreement within six months may disqualify the selected developer, and the [ATDC] board may select developers from the remaining proposals or repeat the RFP process from the first step.

(8) As soon as practicable following the final presentation, the [ATDC] . . . shall publicly announce the selection of the developer–lessee and shall then enter into negotiations for a development agreement for development of the project and for issuance of a long–term lease for the development area. . . .

(Emphasis added.)

ATDC Rule 15–26–47, relating to "[d]irect negotiations," provides in relevant part:

Should the [ATDC] . . . determine to select a developer–lessee by direct negotiation, the [ATDC] board shall prepare or cause to be prepared a development plan for [the complex] which . . . accommodates the plans, specifications, designs or estimates of any project the [ATDC] board finds acceptable and advisable to carry out the intent of [HRS ch. 206J].

On May 31, 1989, the ATDC issued an RFP that invited developers to submit proposals for the development of the complex. Four developers, including ATA, submitted proposals. Kaapu alleges in an affidavit attached to his memorandum in opposition to the ATDC's motion for summary judgment (the Kaapu affidavit) that, after it submitted its proposal, one of the developers — The Hawaiian Waterfront Connection Consortium — was expanded to embrace organizations and individuals, including Kaapu, who are representative of the indigenous Hawaiian community.

On December 21, 1989, the ATDC conducted an open public meeting (the public meeting), in accordance with HRS § 92–3 (1985 and Supp. 1992),[7] for the purpose of making the final selection of a developer with which to enter into negotiations for a long–term lease of the

---

[7] HRS ch. 92 (1985 and Supp. 1992) is popularly known as the "Sunshine Law." *Outdoor Circle v. Harold K.L. Castle Trust Estate*, 4 Haw. App. 633, 641, 675 P.2d 784, 790 (1983), *cert. denied*, 67 Haw. 1, 677 P.2d 965 (1984). HRS § 92–3 (Supp. 1992) provides in relevant part:

> Every meeting of all boards shall be open to the public and all persons shall be permitted to attend any meeting unless otherwise provided in the constitution or as closed pursuant to sections 92–4 and 92–5 . . . . The boards shall afford all interested persons an opportunity to submit data, views, or arguments, in writing on any agenda item. The boards shall also afford all interested persons an opportunity to present oral testimony on any agenda item. . . .

The provisions of HRS §§ 92–4 and 92–5 (1985) are immaterial to this case.

HRS § 92–2(1) (1985) defines "board" in relevant part to mean "any agency . . . of the State which is created by . . . statute . . . to have supervision, control, jurisdiction or advisory power over specific matters and which is required to conduct meetings and to take official actions." The ATDC is a "board" within the meaning of HRS ch. 92.

complex. Pursuant to HRS §§ 92–3 and 92–7 (1985),[8] the public was given timely notice of the public meeting and invited to offer testimony.

Prior to the public meeting, various members of the news media requested copies of the four development proposals. Kaapu was not a party to the request. The ATDC board's legal counsel requested an opinion from the Office of Information Practices (OIP)[9] regarding whether disclosure was required under the Hawaii Uniform Information Practices Act (Modified), HRS ch. 92F (Supp. 1992) (UIPA). The OIP responded that "[t]he development proposals may remain confidential under the 'frustration exemption' in [HRS § 92F–13(3) (Supp. 1992)][10] until the ATDC has completed its selection procedure and made a final choice of a developer for the ... complex." The ATDC board therefore declined to release the proposals.

Kaapu did not testify at the public meeting. The Kaapu affidavit alleges that Kaapu and various members

---

[8] HRS § 92–7(a) (1985) provides in relevant part that "[t]he board shall give written public notice of any regular, special, or rescheduled meeting .... The notice shall include an agenda which lists all of the items to be considered at the forthcoming meeting [and] the date, time, and place of the meeting ...."

[9] The legislature created the OIP in 1988, see HRS § 92F–41 (Supp. 1992), and codified its powers and duties in HRS § 92F–42 (Supp. 1992). Act 262, § 1, 1988 Haw. Sess. Laws 474, 481–82. HRS § 92F–42(2) and (3) authorizes the OIP to give advisory opinions concerning the functions and responsibilities of agencies (such as the ATDC) under the UIPA.

[10] HRS § 92F–13(3) provides that the UIPA does not require disclosure of "[g]overnment records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function[.]" HRS § 92F–3 defines "government record" to mean "information maintained by an agency in written, auditory, visual, electronic, or other physical form."

of the public objected to the ATDC Rules mandating the confidentiality of the development proposals and "asked" the ATDC board to postpone the final selection of a developer for the complex until "information about the various [p]roposals was released to the public." This objection and request apparently consisted of a "memorandum" submitted to the ATDC by "concerned citizens" at an unspecified time prior to the commencement of the meeting. The memorandum, which was signed by approximately seventeen individuals, exhorted the "powers that be to provide the basic information on all proposals to develop the Aloha Tower area . . . ." Kaapu's signature nowhere appeared on the "memorandum," although his name and a telephone number were typed on the upper right–hand corner.

The typed name on the "memorandum" is the only indication in the record of any participation by Kaapu in the proceedings of the public meeting. Following public testimony and discussion, the ATDC board selected ATA as the developer with whom the ATDC would enter into negotiations for a development agreement and long–term lease.

The ATDC entered into a development agreement with ATA on June 19, 1990. It appears from the record that negotiations between the ATDC and ATA regarding the terms of a long–term lease are not yet completed. Accordingly, in the event the negotiations are ultimately fruitless, the ATDC could potentially select a different developer.

On March 16, 1990, Kaapu filed an initial complaint seeking declaratory and injunctive relief against the ATDC. Specifically, Kaapu prayed for a construction of ATDC Rules 15–26–42 and 15–26–44(6) and (7) and an injunction against any action based on them taken by the ATDC. The complaint alleged that the ATDC's selection

of ATA's development proposal was illegal because the ATDC refused to disclose the four submitted development proposals before making its decision, in violation of HRS chs. 92 and 92F. The complaint thus claimed that: (1) the ATDC's "secrecy" precluded Kaapu from obtaining information necessary to give informed testimony at the public meeting; and (2) the ATDC's action denied Kaapu procedural due process by depriving him of an opportunity to be heard at the public meeting, to be aware of the matters pending, to make an informed choice whether to acquiesce or contest, and to assert his reasons for making a choice.

Kaapu filed a second amended complaint on March 12, 1991, which departed substantively from the original in two material respects. First, Kaapu alleged that ATDC Rule 15–26–42 allowed selection of a developer in a manner violative of the authority conferred by HRS § 206J–11. Second, Kaapu abandoned his claim that the ATDC's action raised any issues implicating procedural due process.

In any event, Kaapu has sued from the beginning in his *individual* capacity only. He does not claim to represent any class, group, entity, or individual — including any developer — other than himself. Kaapu makes no claim that the ATDC Rules were illegally or unfairly applied to the prospective developers.

On April 24, 1991, the ATDC filed its motion for summary judgment, in which ATA joined on May 17, 1991. On November 1, 1991, the circuit court entered a decision and order granting summary judgment in favor of the ATDC and ATA, ruling as a matter of law that: (1) Kaapu lacked standing to assert his claim for relief; (2) the ATDC's selection of a developer pursuant to the ATDC Rules did not violate HRS § 206J–11 in its original form or as amended; and (3) the ATDC's nondisclosure of the development

proposals pending finalization of a long–term lease, pursuant to ATDC Rule 15–26–44(6) and (7), was authorized by the "frustration exemption" set forth in HRS § 92F–13(3). Kaapu's timely appeal followed.

## II. **STANDARD OF REVIEW**

"We review an award of summary judgment under the same standard applied by the circuit court." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22 (1992) (citing *Gossinger v. Association of Apartment Owners of The Regency Ala Wai*, 73 Haw. 412, 417, 835 P.2d 627, 630 (1992)). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.' " *Id.* (citation omitted); Hawaii Rules of Civil Procedure (HRCP) 56(c) (1990).

## III. **DISCUSSION**

### A. **Kaapu's Standing to Challenge the ATDC's Decision to Withhold Disclosure of Development Proposals**

Kaapu contends that the plain language of HRS § 92–12 (1985) of the Sunshine Law confers standing on him to challenge the validity of the confidentiality provisions of ATDC Rule 15–26–44 as a justification for the ATDC's nondisclosure of the development proposals at the public meeting.[11] We agree.

---

[11] In his second amended complaint, Kaapu alleges that the ATDC's wrongful reliance on ATDC Rule 15–26–44 deprived the public, including himself, of the opportunity "to make an informed choice as to

HRS § 92–12 provides in relevant part:

(a) The attorney general and the prosecuting attorney shall enforce this part.

. . . .

(c) *Any person* may commence a suit in the circuit court of the circuit in which a prohibited act occurs for the purpose of requiring compliance with or preventing violations of this part [*i.e.*, HRS §§ 92–1 through 92–13, relating to "meetings"] or to determine the applicability of this part to discussions or decisions of the public body. The court may order payment of reasonable attorney fees and costs to the prevailing party in a suit brought under this section.

(Emphasis added.)

Literally construed, HRS § 92–12(c) authorizes "any person" to file a lawsuit in circuit court to seek enforcement of the "open meetings" provisions of HRS § 92–3. "Where the terms of a statute are plain, unambiguous and explicit, the courts are not at liberty to go outside of the language to search for a meaning which does not reasonably [accord with] the terms of the statute." *City and County of Honolulu v. Public Utilities Comm'n*, 53 Haw. 431, 433–34, 495 P.2d 1180, 1182 (1972) (citations omitted).

In effect, HRS § 92–12 gives Kaapu standing to challenge the validity of the confidentiality provisions of ATDC Rule 15–26–44 as a "private attorney general," inasmuch as he is a " 'person[ ] upon whom [the legislature] has conferred the right to seek judicial review of

---

whether to acquiesce in or contest 'selection' of any of the several [development proposals]," in violation of the mandate of HRS § 92–3.

agency action.'" *See* ***Hawaii's Thousand Friends v. Anderson***, 70 Haw. 276, 285, 768 P.2d 1293, 1300 (1989) (quoting ***Sierra Club v. Morton***, 405 U.S. 727, 737–38, 92 S. Ct. 1361, 1367, 31 L. Ed. 2d 636 (1972) (emphasis deleted)). Ordinarily, statutes require "economic injury" rather than mere concern for the "public interest" as a predicate to standing to sue as a "private attorney general." *See id.* But in the case of HRS § 92–12, "any person" is expressly authorized to initiate a lawsuit, upon the allegation that "a prohibited act" has occurred in violation of HRS §§ 92–1 through 92–13, in order to enforce compliance with or determine the applicability of the Sunshine Law to the proceedings of "boards" such as the ATDC.

Noting Kaapu's lack of meaningful participation in the public meeting, the ATDC cites ***Mahuiki v. Planning Commission***, 65 Haw. 506, 654 P.2d 874 (1982), ***Jordan v. Hamada***, 62 Haw. 444, 616 P.2d 1368 (1980), and ***Munoz v. Commissioner of Public Lands***, 40 Haw. 675 (1955), for the proposition that "Hawaii law requires one who seeks judicial review of administrative action to show that one actually participated as an adversary in the proceeding involving the disputed decision" in order to have standing to seek judicial review. All three cases, however, are inapposite to the question of standing under HRS § 92–12.

*Mahuiki* and *Jordan* involved attempts by plaintiffs claiming to be "persons aggrieved . . . in a contested case" to obtain judicial review of an administrative agency's action under HRS § 91–14(a) (1985) of the HAPA;[12] in each instance, this court ruled that "participation in a

_____

[12] HRS § 91–14(a) provides in relevant part that "[a]ny person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a

hearing as an adversary" was a *statutory* prerequisite to standing. **Mahuiki**, 65 Haw. at 514–15, 654 P.2d at 879–80; **Jordan**, 62 Haw. at 449, 616 P.2d at 1372. In the present matter, however, Kaapu relies on HRS § 92–12, rather than HRS § 91–14(a), as the basis for standing to sue.

*Munoz*, a pre–HAPA case, stands for the principle that a party who directly and actively participates in a judicial or other public sale or auction of property and accepts the benefits of the sale by bidding is equitably estopped from "impugning the disposition of such property." 40 Haw. at 688–89. Standing to sue, rather than equitable estoppel, is at issue here.

The feature distinguishing the standing requirement under HAPA from that underlying the Sunshine Law is succinctly set forth in *City and County of Honolulu v. Public Utilities Commission*, as follows:

> HRS § 91–14(a), which provides "[a]ny person aggrieved by a final decision and order in a contested case . . . is entitled to judicial review . . .", is clear and unambiguous that the person aggrieved must have been involved in the contested case . . . .
> HRS § 91–14(a) does not provide simply that "any person aggrieved by a final decision and order is entitled to judicial review." If the legislature intended to give any person aggrieved by a final decision and order, *regardless of whether the person participated* in a contested case, the right to judicial review, the legislature would have so stated.

---

subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter . . . ."

53 Haw. at 433, 495 P.2d at 1182 (emphasis in original). Just as HRS § 91–14(a) clearly and unambiguously requires that a person aggrieved by a decision and order have participated in the contested case that produced it, so HRS § 92–12 clearly and unambiguously entitles "any person" to "commence a suit in the circuit court of the circuit in which a prohibited act occurs," regardless of the person's participation in any proceeding. Such a construction of HRS § 92–12 is consistent with the legislature's "[d]eclaration of policy and intent," set forth in HRS § 92–1 (1985), "that the formation and conduct of public policy — the discussions, deliberations, decisions, and action of governmental agencies — shall be conducted as openly as possible" in order "to protect the people's right to know . . . ."

Accordingly, we hold as a matter of law that the circuit court erred in ruling that Kaapu lacked standing to challenge the validity of the confidentiality provisions of ATDC Rule 15–26–44 as a justification for the ATDC's nondisclosure of the development proposals at the public meeting. However, we further hold that the error was harmless, inasmuch as it does not alter the ultimate disposition of this matter.

## B. **Alleged Violation of HRS Chapter 92 ("Sunshine Law")**

Kaapu contends, *inter alia*, that ATDC Rule 15–26–44(6) and (7) violates the "mandate" of HRS § 92–3 and that the circuit court therefore erred in ruling that the ATDC was legally entitled to maintain the confidentiality of the development proposals until after both a long–term lease and development agreement were executed by the ATDC and a successful developer. We disagree.

The "mandate" of HRS § 92–3 is that: (1) meetings of state "boards" be open to the public; (2) all persons be permitted to attend; and (3) interested persons be afforded an opportunity to *submit* written and oral testimony and information. In other words, HRS § 92–3 ensures public access to open meetings of state agencies and an opportunity to be heard. Neither HRS § 92–3 in particular nor the Sunshine Law, HRS ch. 92, in general addresses the public's interest in disclosure of or access to government records. That is the distinct, albeit related, subject matter of the UIPA, HRS ch. 92F.[13] And it is precisely the public's interest in disclosure of and access to government records that Kaapu alleges is inhibited by the confidentiality provisions of ATDC Rule 15–26–44.

It therefore follows, and we so hold, that ATDC Rule 15–26–44 neither conflicts with nor contradicts the "mandate" of either HRS § 92–3 or the Sunshine Law as a whole, and Kaapu is not entitled to disclosure of the development proposals under those statutory provisions.[14]

---

[13] HRS § 92F–2 (Supp. 1992) provides in relevant part:

> This chapter shall be applied and construed to promote *its underlying purposes and policies*, which are to:
>
> (1)   Promote the public interest in disclosure;
> . . . .
> (3)   Enhance governmental accountability through a general policy of access to government records . . . .

(Emphasis added.)

[14] Inasmuch as no violation of the Sunshine Law has occurred in this case, *a fortiori*, there has been no "wilful" violation of that law. Thus, Kaapu cannot successfully nullify the ATDC's selection of ATA as the developer of the complex pursuant to HRS § 92–11 (1985), which provides in relevant part that "[a]ny final action taken in violation of [HRS §] 92–3 . . . shall be voidable upon proof of wilful violation."

## C. Alleged Violation of HRS
## Chapter 92F (UIPA)

Inasmuch as the "underlying purposes and policies" of the UIPA, HRS chapter 92F, include the promotion of the public interest in disclosure of and access to government records, HRS § 92F–2(1) and (3) (Supp. 1992),[15] we must address the allegation raised in Kaapu's second amended complaint that the ATDC violated the "mandate" of the UIPA when it relied on the confidentiality provisions of ATDC Rule 15–26–44(6) and (7) in declining to release the development proposals at the public meeting.[16]

As we have noted, the OIP advised the ATDC board prior to the public meeting that the development proposals could lawfully remain confidential under the

---

[15] *See supra* note 13.

[16] To date, this court has not had occasion to delineate the standing requirements to seek judicial enforcement of access to government records under the UIPA. The applicable statutory provision is HRS § 92F–15(a) (Supp. 1992), which provides that "[a] person aggrieved by the denial of access to a government record may bring an action against the agency at any time within two years after the agency denial to compel disclosure." In the present matter, none of the parties address the question whether Kaapu is a "person aggrieved" within the meaning of HRS § 92F–15(a). Indeed, only ATA alludes to the statute at all. ATA's answering brief at 22. ATA appears to assume *arguendo* that the statute is available to Kaapu in the present case, but argues that

> There is nothing in this section or anywhere else in the [UIPA] which gives the aggrieved party the right to use denial of access to a government record as a basis to set aside an action by the [ATDC] . . . . Interestingly, the record in this case is totally devoid of any indication that [Kaapu] ever sought access to the [development] proposals from the [ATDC].

*Id.* Because we agree with ATA's observations and because it is unnecessary to resolve this particular question to determine the correctness of the circuit court's grant of summary judgment in ATDC and ATA's favor, we decline to reach the issue at this time.

"frustration exemption" set forth in HRS § 92F–13(3) until the ATDC completed its selection procedure and made a final choice of a developer for the complex. HRS § 92F–11 (Supp. 1992) provides in relevant part:

> (a) All government records are open to public inspection unless access is restricted or closed by law.
>
> (b) Except as provided in section 92F–13, each agency upon request by any person shall make government records available for inspection and copying during regular business hours.
>
> . . . .

HRS § 92F–13 provides in relevant part:

> **Government records; exceptions to general rule**. This chapter shall not require disclosure of:
>
> . . . .
>
> (3) Government records that, by their nature, must be confidential in order for the government to avoid the *frustration of a legitimate government function*[.]

(Emphasis added.)

The question therefore arises whether the development proposals are government records generally open to public inspection, pursuant to HRS § 92F–11(a), on the one hand, or government records that, by their nature, must be kept confidential in order to avoid the frustration of a legitimate government function, pursuant to HRS § 92F–13(3) and ATDC Rule 15–26–44(6) and (7), on the other. To resolve this question, we turn to fundamental principles of statutory construction.

This court has recently reiterated that:

> The interpretation of a statute is a question of law reviewable *de novo*. When construing a statute, our foremost obligation "is to ascertain and give effect to the intention of the legislature" which "is to be obtained primarily from the language contained in the statute itself." *In re Hawaiian Telephone Co.*, 61 Haw. 572, 577, 608 P.2d 383, 387 (1980); *accord Gorospe v. Matsui*, 72 Haw. 377, 379, 819 P.2d 80, 81 (1991). We must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose. *In re Doe Children*, 73 Haw. 15, 20, 827 P.2d 1144, 1146 (1992). "When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute an ambiguity exists." *State v. Sylva*, 61 Haw. 385, 388, 605 P.2d 496, 498 (1980). If the statutory language is ambiguous or doubt exists as to its meaning, "[c]ourts may take legislative history into consideration in construing a statute." *Life of the Land v. City and County of Honolulu*, 61 Haw. 390, 447, 606 P.2d 866, 899 (1980).

*Franks v. City and County of Honolulu*, 74 Haw. 328, 334–35, 843 P.2d 668, 671–72 (1993).

Because there is inherent uncertainty or doubt regarding whether HRS § 92F–11(a) or HRS § 92F–13(3) governs the public's access to the development proposals, it is necessary to take into consideration the legislative history underlying the UIPA. The Senate Government Operations Committee of the 1988 Hawaii legislature declared the following pertinent legislative intent regarding the bill that was to become the UIPA:

The purpose of this bill is to repeal both the current law on public access to government records (Part V of Chapter 92, Hawaii Revised Statutes (HRS)) and the current chapter limiting access in the interest of privacy, limiting inter-agency record sharing and providing for the correction of inaccurate entries (Chapter 92E, HRS). In their place, the bill proposes a detailed and comprehensive chapter, based on the *Uniform Information Practices Code* of the National Conference of Commissioners on Uniform State Laws.

. . . .

4. A new [s]ection . . . is added to create four categorical exceptions to the general rule [of public access]. Rather than list specific records in the statute, at the risk of being over– or under–inclusive, your Committee prefers to categorize and rely on the developing common law. The common law is ideally suited to the task of balancing competing interest[s] in the grey areas and unanticipated cases, under the guidance of the legislative policy. *To assist the Judiciary in understanding the legislative intent, the following examples are provided.* [Emphasis added.]

. . . .

(b) *Frustration of legitimate government function.* The following are *examples of records which need not be disclosed, if disclosure would frustrate a legitimate government function.* [Emphasis added.]

. . . .

    (3) Information which, if disclosed, would raise the cost of government procurements or give a manifestly unfair advantage to any person proposing to enter into a contract or agreement with an agency . . . ;

    . . . .

    (6) Proprietary information, such as research methods, records and data, computer programs and software and other types of information owned by an agency or entrusted to it;

    (7) Trade secrets or confidential commercial and financial information . . . .

Sen. Stand. Comm. Rep. No. 2580, in 1988 Senate Journal, at 1093–95.

The submissions required of a proposed developer by an RFP, pursuant to ATDC Rule 15–26–44(5), clearly fall within one or more of the classes of information described in the legislative history set forth above. Public disclosure of development proposals — involving proprietary and other confidential information, such as trade secrets and confidential commercial and financial data — prior to final negotiation of a long–term lease could foreseeably give an unfair competitive advantage to other developers in the event negotiations were to break down. Concern over this risk could cause developers to offer up deliberately vague plans or decline to submit development proposals altogether. The likely result would be fewer submissions and an increase in the cost of government procurements.

In light of the above, we believe that the only reasonable construction of development proposals submitted pursuant to ATDC Rule 15–26–44 that is consistent with

the relevant legislative history of the UIPA is that they are government records that, by their nature, must be kept confidential in order to avoid the frustration of a legitimate government function within the meaning of HRS § 92F–13(3). We therefore hold that the UIPA, HRS chapter 92F, did not require the ATDC to disclose the development proposals.

### D. **Kaapu's Standing to Challenge the ATDC's Selection of ATA as Developer of the Complex**

Kaapu asserts that the ATDC illegally selected ATA as the entity with which it would negotiate the terms of a long–term development of the complex because: (1) the selection mechanism utilized by the ATDC (*i.e.*, the RFP), in accordance with ATDC Rule 15–26–42, violated the "draw or bid for the lease" requirement of HRS § 206J–11 in its pre–amended form;[17] and (2) any effort to invoke retroactively the "apply for such lease" provision of HRS § 206J–11, as amended, would constitute an illegal divesting of Kaapu's property rights. Inasmuch as we agree with the circuit court that Kaapu lacks standing as a matter of law to challenge the ATDC's selection of ATA as the developer of the complex, we need not reach either of these issues.

HRS chapter 206J is devoid of the kind of "private attorney general" provision that is contained in HRS § 92–12. Accordingly, the standard rules governing standing to sue apply to Kaapu's HRS ch. 206J claim. In this regard, "the crucial inquiry . . . is 'whether the plaintiff has alleged such a personal stake in the outcome of the

---

[17] *See supra* note 4.

controversy as to warrant his invocation of . . . [the court's] jurisdiction and to justify exercise of the court's remedial powers on his behalf.' " *Pele Defense Fund v. Paty*, 73 Haw. 578, 592, 837 P.2d 1247, 1257 (1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 1277 (1993) (quoting *Hawaii's Thousand Friends*, 70 Haw. at 281, 768 P.2d at 1298 (citations omitted)).

Kaapu claims that he has standing to sue because "he has suffered a financial and cultural loss" as a result of the ATDC's allegedly illegal action. Kaapu's opening brief at 9. Insofar as his claim of standing is based on an alleged "cultural loss," Kaapu is purporting, at least to that extent, to be suing as a member of the public. *See id.* at 593, 837 P.2d at 1257. Yet, as we have noted, Kaapu has from the inception asserted his claims in his *individual* capacity only; neither his original nor his second amended complaint alleged that he represented any class, group, entity, or individual. Assuming *arguendo*, however, that Kaapu is suing in part in the public interest, we have held that " 'a member of the public has standing to sue to enforce the rights of the public generally, if he can show that he has suffered an injury in fact, and that the concerns of a multiplicity of suits are satisfied by any means, including a class action.' " *Id.* at 593, 837 P.2d at 1257–58 (quoting *Akau v. Olohana Corp.*, 65 Haw. 383, 388–89, 652 P.2d 1130, 1134 (1982)).

"A plaintiff has suffered injury in fact when (1) he or she has suffered an actual or threatened injury as a result of the defendant's wrongful conduct, (2) the injury is fairly traceable to the defendant's actions, and (3) a favorable decision would likely provide relief for the plaintiff's injury." *Id.* at 593, 837 P.2d at 1258; *see also Hawaii's Thousand Friends*, 70 Haw. at 283, 768 P.2d at 1299; *Akau*, 65 Haw. at 389, 652 P.2d at 1134–35.

The Kaapu affidavit alleges that, for historical and genealogical reasons, the geographic area encompassing the complex is of cultural significance to Kaapu. The Kaapu affidavit also alleges that the ATDC's nondisclosure of the rival development proposals impaired his economic interests as an affiliate of one of the competing developers, The Hawaiian Waterfront Connection Consortium (the Consortium). Assuming that these allegations create a genuine issue of material fact as to whether Kaapu has suffered "an actual or threatened injury," the record before us is devoid of both a causal connection between the alleged injury and the ATDC's use of the RFP procedure and any showing that the alleged injury is "likely to be remedied by a favorable judicial decision." *See Hawaii's Thousand Friends*, 70 Haw. at 283, 768 P.2d at 1299.

Whether or not the ATDC utilized an RFP or competitive bidding system, Kaapu was accorded a full and fair opportunity to promote the merits of the Consortium's development proposal at the public meeting, an opportunity of which Kaapu declined to take advantage. Moreover, there has been no showing that a "draw or bid" procedure would have protected Kaapu's interests at the public meeting to a greater extent than the RFP system actually utilized. Kaapu claims that the failure to release the development proposals denied him the right to give informed testimony at the public meeting. Yet a "draw or bid" system would have had no more utility to Kaapu than the RFP procedure inasmuch as the consummation of a long–term lease was not the subject of the public meeting, the only business before the ATDC at that time being the selection of a developer with which to enter into a development agreement based on the merits of the various development proposals. In this connection, Kaapu

does not dispute that he had full knowledge of the Consortium's proposal. Finally, even if the "lease application" terms of HRS § 206J–11, as amended, cannot govern the ultimate negotiation of a long–term lease of the complex — an issue we need not reach in this appeal — the fact remains that no long–term lease has been executed, and there is no certainty that ATA will ever become the developer of the complex; thus, any purported challenge of a consummated long–term lease would not be ripe for adjudication at this time.

For the reasons set forth above, we hold as a matter of law that Kaapu has suffered no injury in fact and that he therefore lacks standing to challenge the ATDC's selection of a developer as a result of the public meeting.

## IV. CONCLUSION

Because neither the Sunshine Law nor the UIPA entitle Kaapu to disclosure of the development proposals prior to the execution of a long–term lease of the complex and because Kaapu lacks standing to challenge the selection of a developer, we affirm the circuit court's decision and order granting summary judgment in favor of the ATDC and ATA.

*Jack F. Schweigert* (Schweigert & Hossellman) for plaintiff–appellant Kekoa D. Kaapu.

*Rick J. Eichor* (*Robert A. Marks* and *Ted Gamble Clause* with him on the brief), Deputy Attorneys General, for defendant–appellee Aloha Tower Development Corporation.

*Robert M. Ehrhorn, Jr.* (Takushi Funaki Wong & Stone) for defendant–appellee Aloha Tower Associates.