948 P.2d 558

**Jerry SHULTZ and Dee Shultz,
Plaintiffs–Appellees,**

v.

**Jerry LUJAN, dba Creative Woods,
Defendant–Appellant**

No. 19496.

Intermediate Court of Appeals of Hawai'i.

Sept. 8, 1997.

Frank D. Rothschild, on the briefs, Hanalei, for defendant-appellant.

Calvin K. Murashige and Richard K. Minatoya (Shiraishi & Murashige, of counsel) on the brief, Lihue, Kauai, for plaintiffs-appellees.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

KIRIMITSU, Judge.

Defendant-Appellant Jerry Lujan (Lujan) appeals from the Fifth Circuit Court's August 3, 1995 findings of fact, conclusions of law, and order (August 3, 1995 Order) and the November 22, 1995 judgment. The August 3, 1995 Order granted summary judgment in favor of Plaintiffs–Appellees Jerry and Dee Shultz (the Shultzes) and denied both Lujan's November 10, 1993 motion to compel arbitration (November 10, 1993 Motion to Compel Arbitration) and Lujan's April 18, 1994 motion to reconsider decision regarding motion to compel arbitration based on a recent supreme court case (April 18, 1994 Motion to Reconsider). Lujan contends that: (1) the circuit court erred in granting the Shultzes' motion for summary judgment because there remained genuine issues of material fact; and (2) the circuit court erred in denying his motion to compel arbitration because he and the Shultzes agreed to arbitrate their dispute. We reverse that portion of the August 3, 1995 Order granting summary judgment, vacate that portion of the August 3, 1995 Order denying Lujan's November 10, 1993 Motion to Compel Arbitration and April 18, 1994 Motion to Reconsider, vacate the November 22, 1995 judgment, and remand for further proceedings consistent with this opinion.

## I. FACTS

On September 11, 1992, Hurricane Iniki struck the Island of Kaua'i and severely damaged the Shultzes' home. The Shultzes approached Lujan to repair their home. Lujan agreed. On October 12, 1992, the parties signed a contract, in which the Shultzes agreed to pay Lujan $153,000 to work on their house. The contract included work such as: repairing the first floor of their home; constructing a new second floor with a deck; painting the interior and exterior of the house; repairing the existing electrical system; and providing materials and labor for the rough plumbing work.

Lujan requested that the Shultzes apply for their building permit as owner/builders because Lujan was not a licensed general contractor, but rather a licensed C–5 specialty contractor. A C–5 specialty contractor performs cabinet and fixture work as well as non-structural remodeling and repairs. Per the contract, however, Lujan and his employees worked on structural portions of the Shultzes' house, including the foundation work to support the second floor, the beams and rafters for the second floor, and the joists and load-bearing sections. Moreover, Lujan ordered and paid for much of the building materials, hired and paid the workers, withheld taxes and medical insurance payment from the workers' wages, directed the duties of his men who were involved in the repair and construction, and contracted with and paid the subcontractors. At the same time, the Shultzes visited the jobsite almost daily, inspected the work performed by Lujan and his workmen, and noted corrections which they felt were necessary. The Shultzes also fired members of the crew and, more than once, sent the crew home and off the jobsite.

As the work progressed, the Shultzes paid Lujan $90,000 in installments for work that included the plywood subfloor and rough dry in. However, a dispute over payments arose in late March 1993 because the costs for labor and materials exceeded those covered by the original contract. In a letter to the Shultzes, Lujan asserted that these extra costs covered items such as new doors for the lower level, materials and labor to enlarge the roof, extra windows by the stairs and on the second floor, and extra decking material. Moreover, Lujan claimed the cost overruns amounted to approximately $100,-

000. Lujan subsequently terminated his work on the project and the Shultzes finished repairing the house themselves.

In an effort to resolve their dispute, the parties entered into a mediation/arbitration submission agreement. In the agreement, Lujan claimed the Shultzes owed him approximately $100,000 for work done. Conversely, the Shultzes claimed that Lujan owed them approximately $86,000 for repair and remediation of improper, inadequate, and dangerous conditions present on the premises as a result of Lujan's construction practices.

On August 29, 1993, the appointed arbitrator issued a letter to the parties confirming the dates for discovery and the arbitration hearing. On the same date, the Shultzes' new counsel wrote to the arbitrator requesting that the arbitration be terminated immediately, based on the Hawai'i Supreme Court case of *Butler v. Obayashi*, 71 Haw. 175, 177, 785 P.2d 1324, 1325 (App.1990), and Hawai'i Revised Statutes (HRS) § 444-22 (1993).[1] Four days later, the Shultzes filed a complaint for declaratory judgment praying that Lujan be barred from commencing civil action to recover payment for the project pursuant to HRS § 444-22. In response, Lujan wrote to the arbitrator insisting that the arbitration continue. The Shultzes, however, apparently refused to proceed; on November 10, 1993, Lujan filed a motion seeking an order compelling the Shultzes to complete the arbitration process. Meanwhile, the Shultzes filed a motion for summary judgment.

After several hearings, the circuit court entered its August 3, 1995 Order denying Lujan's November 10, 1993 Motion to Compel Arbitration and April 18, 1994 Motion to Reconsider and granting the Shultzes' motion for summary judgment. The court specifically found that because Lujan worked outside and beyond the scope of his C-5

license, he was an unlicensed contractor on the Shultz project. The court, therefore, concluded that Lujan was prohibited under HRS § 444-22 from recovering in any civil action for work performed under the Shultz contract.[2] Judgment was entered on November 22, 1995. Lujan timely appealed.

## II. STANDARD OF REVIEW

### A. Summary Judgment

"On appeal, an order of summary judgment is reviewed under the same standard applied by the trial courts." *Pacific Int'l Servs. Corp. v. Hurip*, 76 Hawai'i 209, 213, 873 P.2d 88, 92 (1994) (quoting *Delos Reyes v. Kuboyama*, 76 Hawai'i 137, 138, 870 P.2d 1281, 1282 (1994)). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id.* (quoting *Kaapu v. Aloha Tower Dev. Corp.*, 74 Haw. 365, 379, 846 P.2d 882, 888 (1993) (citations and internal quotation marks omitted)). In considering whether a genuine issue of material fact has been created, the inferences to be drawn from the underlying facts alleged in the pleadings, admissions, affidavits and depositions must be viewed in the light most favorable to the party opposing the motion. *Fochtman v. Honolulu Police & Fire Dept's*, 65 Haw. 180, 183, 649 P.2d 1114, 1116 (1982).

### B. Motion to Compel Arbitration

▮ A lower court's ruling on a motion to compel arbitration is reviewed *de novo*. Furthermore, the appellate court bases this review on the same evidentiary materials that were before the trial court when it determined the motion. *Koolau Radiology, Inc. v. Queen's Medical Ctr.*, 73 Haw. 433, 440, 834 P.2d 1294, 1298 (1992) (citing *Felici-*

---

1. Hawai'i Revised Statutes (HRS) § 444-22 provides:
   The failure of any person to comply with any provision of this chapter shall prevent such person from recovering for work done, or materials or supplies furnished, or both on a contract or on the basis of the reasonable value thereof, in a civil action, if such person failed

to obtain a license under this chapter prior to contracting for such work.
   HRS § 444-22 (1993).

2. The trial court's order did not affect the $90,000 that Defendant–Appellant Jerry Lujan (Lujan) had already received.

*ano v. Waikiki Deep Water, Inc.*, 69 Haw. 605, 607, 752 P.2d 1076, 1078 (1988)).

## III. *DISCUSSION*

### A. *Summary Judgment*

Lujan's primary argument is that the circuit court erred in granting the Shultzes' motion for summary judgment because there remained genuine issues of material fact. We agree.

■ First, Lujan argues that there were material issues of fact as to the question of whether he was an employee of the Shultzes or an independent contractor. This question is significant because HRS § 444-2(6) (1993) exempts from the chapter "[a]ny person who engages in the activities regulated in this chapter as an employee with wages as that person's sole compensation." Hence, if Lujan was an employee, then HRS § 444-22 did not bar him from bringing suit, and the Shultzes were not entitled to judgment as a matter of law. Having reviewed the evidence presented in the affidavits and hearings in the light most favorable to Lujan, we conclude that there are issues of material fact that must be decided to determine whether Lujan acted as a contractor or as an employee of the Shultzes. As such, we reverse that portion of the August 3, 1995 Order granting summary judgment.[3]

Despite our holding, our analysis does not end here. We believe that this case presents our court with the opportunity to resolve another important issue—namely the effect of HRS § 444-22 when a contractor is only partially licensed to perform a contract. Therefore, solely for the purpose of further discussion, we will presume that Lujan did function as an independent contractor.

### B. *HRS § 444-22 Permits a Contractor Who Performs Both Licensed and Unlicensed Work to Bring an Action to Recover Payment for the Licensed Portion of the Work*

■ Under HRS § 444-22, if a person contracts to perform the work of a contractor[4] but, at the time of contracting, the person is not licensed to do the work, then that person is prohibited from bringing civil action to recover payment for work done. However, the impact of HRS § 444-22 is unclear in the situation where a contractor contracts to do work that he is only partially licensed to perform. Thus, the dispositive question is whether HRS § 444-22 permits a contractor, who performs both licensed and unlicensed work, to bring an action to recover payment for the licensed portion of the work. For the reasons set forth below, we hold that it does.

#### 1. *Statutory interpretation of HRS § 444-22.*

When construing statutes, the Supreme Court of Hawai'i has long held that

the fundamental starting point is the language of the statute itself.... Moreover, where the language of the statute is plain and unambiguous, our only duty is to give

---

3. For example, Mark Michetti, the roofer on the job, testified that

it seemed to me, as all the other homeowner builder project[s] that I've been on, that Mr. Lujan and the other people that were working on the job were employees of Mr. [Jerry] Shultz. Jerry Lujan who seemed to be the most knowledgeable carpenter on the job was not in any position to call the shots, so to speak, to make decisions. It seemed to me that they were just working under the supervision of [Plaintiffs–Appellees Jerry and Dee Schultz (the Shultzes)], the Shultzes using Mr. Lujan for his, you know carpentry knowledge.

Additionally, Lujan testified that the determination of structural support was the architect's responsibility and that "[the architect] was watching the project the whole time and we were required by the architect to call him up and have

him come up and inspect everything we did before ... the next stage went on as in the footings and the steel and the concrete."

4. HRS § 444-1 provides:

"Contractor" means any person who by oneself or through others offers to undertake, or holds oneself out as being able to undertake, or does undertake to alter, add to, subtract from, improve, enhance, or beautify any realty or construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish any building, highway, road, railroad, excavation, or other structure, project, development, or improvement, or do any part thereof, including the erection of scaffolding or other structures or works in connection therewith.

HRS § 444-1 (1993).

effect to its plain and obvious meaning. When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. Put differently, a statute is ambiguous if it is capable of being understood by reasonably well-informed people in two or more different senses. *Konno v. County of Hawai'i*, 85 Hawai'i 61, 71, 937 P.2d 397, 407 (1997) (citing *State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995) (internal quotation marks, citations, ellipses, and brackets omitted)).

Furthermore, "[s]tatutory construction dictates that an interpreting court should not fashion a construction of statutory text that effectively renders the statute a nullity or creates an absurd or unjust result." *Id.* (citing *Dines v. Pacific Ins. Co.*, 78 Hawai'i 325, 337, 893 P.2d 176, 188 (1995) (citations omitted)).

These principles shall guide us in the analysis of HRS § 444–22.

HRS § 444–22 states:

The failure of any person to comply with any provision of this chapter shall prevent such person from recovering for work done, or materials or supplies furnished, or both on a contract or on the basis of the reasonable value thereof, in a civil action, if such person failed to obtain a license under this chapter prior to contracting for such work.

Under the facts of the present case, the scope of the penalty of HRS § 444–22 is ambiguous. The first provision rather generally states that a person who fails to comply with the provisions of chapter 444 shall be prevented "from recovering for *work done* ... in a civil action[.]" HRS § 444–22 (emphasis added). However, the final provision of HRS § 444–22 indicates that the penalty shall apply "if such person failed to obtain a license under this chapter prior to contracting for *such work.*" *Id.* (emphasis added). As a result, when a contractor is licensed to do only part of the work he has contracted for, it is unclear whether civil action for payment is barred for all of the "work done" or only "such work" that was unlicensed. If the term "work done" includes any and· all work, then a contractor who contracts to perform partially licensed and partially unlicensed work may not bring any claim for compensation even if a substantial portion of the job was licensed activity. On the other hand, if the term "work done" is limited to "such work" that was unlicensed, then the same contractor could not bring an action to recover for the unlicensed work, but could bring an action to recover for the licensed portion of the work. As evidenced, the term "work done" is capable of being understood by reasonably well-informed people in two or more different senses. Thus, the term is ambiguous. *See Konno*, 85 Hawai'i at 71, 937 P.2d at 407 (stating that ambiguity exists when there is "doubleness of meaning"). In light of this ambiguity, and because the legislative history provides no hint of the legislature's intent in this situation, we shall construe the statute to avoid an absurd or unjust result. *Id.*

First, it is clear that the statute bars civil action for payment where a person contracts to do work, the whole of which he is unlicensed to perform. Indeed, "HRS Chapter 444, providing for the licensing of contractors expresses a very strong public policy that contractors in this state should apply for, and receive licenses, and the provisions of HRS § 444–22, which are sweeping in their terms, are obviously intended to produce harsh results in furtherance of that policy." *Butler v. Obayashi*, 71 Haw. at 177, 785 P.2d at 1325.

However, we maintain that a contractor who contracts for both licensed and unlicensed work presents a different situation. We must consider the unjust consequences which could result if contractors were prevented from suing to recover for all work done because they were unlicensed for only a portion of the contract. We believe that such a result would be unduly harsh. In addition, such an interpretation might encourage some

unscrupulous homeowners to take advantage of licensed contractors by contracting with them to do primarily licensed activity, but including therein a small amount of unlicensed activity. At the conclusion of the project, the homeowner could refuse to make payment and the contractor would have no civil recourse.

■ Therefore, we conclude that the following rule is both consistent with *Butler* and also constitutes a just and reasonable construction of HRS § 444–22: If a person contracts to perform the work of a contractor and, at the time of contracting, the person is not licensed to do any of the work, then that person cannot bring a civil action to recover payment for any of the work he has done; however, if the person, at the time of contracting, is licensed to perform some of the work contracted for, then that person can bring a civil action to recover payment for the licensed work he has done, while payment for the unlicensed work remains unrecoverable. Furthermore, the burden of proof should lie on the contractor to prove the extent and reasonable value of the licensed work completed.

2. *If Lujan is ultimately found to have acted as a contractor, then he is entitled to bring a civil action to recover payments for the licensed work done on the Shultz house.*

■ We now apply this rule to the facts of the present case. At the time Lujan contracted with the Shultzes, he possessed a C–5 contractor's license. A C–5 contractor is licensed to do cabinet and fixture work, as well as non-structural remodeling and repair work.[5] Furthermore, a C–5 contractor is prohibited from conducting work which would involve changes to a building's basic components, such as the foundation, beams, rafters, or joists. The contract between the Shultzes and Lujan describes the project simply as the "Schultz Residence." Furthermore, the contract states that "[Lujan] shall execute the entire Work described in the Contract Documents[6] except to the extent specifically indicated in the Contract Documents to be the responsibility of others[.]" The contract itself lists numerous items that were the responsibility of the Shultzes, but these items are primarily concerned with payment for certain costs and materials. The Contract Documents do not indicate that structural work is the responsibility of any person other than Lujan. Furthermore, Lujan admits that he agreed to repair the Shultz house for the sum of $153,000, with the provision that the Shultzes provide the plans, specifications, and an architect. Because the repair of the Shultz house included structural work such as foundation work and putting up supports, beams and rafters for the second floor, it is clear that some of the work that Lujan contracted to do for the Shultzes was structural and outside the scope of his C–5 license. Therefore, under HRS § 444–22, Lujan is barred from bringing civil action to recover for the work he performed that was beyond the scope of his C–5 license.

Nevertheless, some of the work that Lujan contracted to perform was within the scope of his C–5 license. For example, the repair of the Shultz home included non-structural walls, siding, windows, doors, trim, railings, interior doors, baseboard, casing, cabinets, and counter-tops. Thus, if Lujan is ultimately found to have acted as a contractor, then he may bring civil action to recover payments for the licensed work that he did on the Shultz house. Furthermore, Lujan bears the

5. Exhibit "A" to Title 16, Chapter 77, of Hawai'i Administrative Rules allows a C–5 contractor to do the following:

To install cabinet, case, sash, door, trim, non-bearing partitions, and to remodel or to make repairs to existing buildings or structures, or both and to do any other work which would be incidental and supplemental to the remodeling or repairing. The repairs, carpentry work, or remodeling shall include doors, and the installation of garage doors, bifold, and shutter doors, and the installation of manufactured sidings and any other work that would not involve changes or additions to the building's or structure's basic components such as, but not limited to, foundations, beams, rafters, joists, or any load bearing members or sections[.]

6. The Contract Documents consisted of the agreement, drawings, specifications, a cassette tape of a meeting between the Shultzes and Lujan, and modifications issued after execution of the agreement.

burden of proving the extent and reasonable value of the licensed work completed.

### C. *Motion to Compel Arbitration*

■ Lujan also argues that the circuit court erred in denying his motion to compel arbitration.[7] In light of our reversal of the Shultzes' summary judgment, and because the summary judgment was the basis for the circuit court's denial of Lujan's motion to compel arbitration, we now vacate that portion of the circuit court's August 3, 1995 Order that denied Lujan's November 10, 1993 Motion to Compel Arbitration and Lujan's April 18, 1994 Motion to Reconsider, and remand for further proceedings.

### III. *CONCLUSION*

For the reasons discussed above, we reverse that portion of the August 3, 1995 Order granting summary judgment, vacate that portion of the August 3, 1995 Order denying Lujan's November 10, 1993 Motion to Compel Arbitration and April 18, 1994 Motion to Reconsider, vacate the November 22, 1995 judgment, and remand for further proceedings consistent with this opinion.

---

**7.** While HRS § 444–22 does not expressly define "civil action" as including arbitration, such an inclusion is implicit, because confirmation of an arbitration award must occur in circuit court. This confirmation constitutes a civil action which is prohibited by HRS § 444–22.