873 P.2d 88

**PACIFIC INTERNATIONAL SERVICES CORPORATION, d/b/a Dollar Rent A Car, Hawai'i, Plaintiff–Appellant,**

v.

**Eddie HURIP, a/k/a Eddie Hurid, Defendant–Appellee.**

No. 15969.

Supreme Court of Hawai'i.

May 12, 1994.

210

William S. Hunt and Peter C. Hsieh of Alston Hunt Floyd & Ing, on the briefs, Honolulu, for plaintiff-appellant.

Roy F. Hughes, on the briefs, Honolulu, for defendant-appellee.

Before MOON, C.J., LEVINSON and NA-KAYAMA, JJ., JAMES S. BURNS, Intermediate Court of Appeals Chief Judge in Place of KLEIN, J., recused, and ACOBA, Circuit Court Judge, assigned by reason of vacancy.

LEVINSON, Justice.

The plaintiff-appellant Pacific International Services Corporation, dba Dollar Rent A Car (Dollar) appeals the circuit court's order (order), dated March 2, 1992, which (1) granted the defendant-appellee Eddie Hurip (Hurip), a.k.a. Eddie Hurid's motion for summary judgment and declaratory relief and (2) dismissed all of the claims against Hurip set forth in Dollar's complaint for declaratory relief.

Dollar is a "U–Drive rental business," which rents or leases motor vehicles to customers for periods not exceeding six months. Hurip, the driver of an automobile (U–Drive vehicle) rented from Dollar by Henry Ma, was identified by a third party as a tortfeasor in a personal injury claim arising out of a motor vehicle accident. Relying on the "unauthorized driver exclusion clause" (the exclusion) in its rental agreement with Ma, Dollar advised Hurip that it would not defend or indemnify him in connection with the

personal injury claim and thereafter filed the complaint for declaratory relief that is the subject of the present appeal.

In his motion for summary judgment, Hurip urged, *inter alia*, that the exclusion is in derogation of Honolulu, Haw., Rev. Ordinances § 12–2.7 (1990) (the Financial Responsibility Law) and that Dollar is therefore obligated to defend and indemnify him with respect to the personal injury claim. Dollar opposed Hurip's motion, arguing that (1) the Financial Responsibility Law is either preempted by or in conflict with state law, and (2) Dollar is therefore entitled to rely on the exclusion. The circuit court sided with Hurip, declaring in its order, *inter alia*, that the exclusion is "void or unenforceable as contrary to" the Financial Responsibility Law and that "Dollar owes a duty to defend and indemnify ... Hurip[.]"

For the reasons set forth below, we affirm the circuit court's order granting summary judgment in Hurip's favor.[1]

## I. BACKGROUND

The facts underlying the present appeal are undisputed. On June 3, 1988, Ma rented a U–Drive vehicle from Dollar, a self-insured U–Drive rental business.[2] The rental agreement between Dollar and Ma expressly prohibited any person not listed as an additional driver from using or operating the U–Drive vehicle.

On or about June 5, 1988, Hurip was involved in a motor vehicle accident (the accident) while driving Ma's U–Drive vehicle. Hurip was not a listed additional driver under the rental agreement and had neither express nor implied permission from *Dollar* to operate the U–Drive vehicle, although he did have *Ma's* permission to operate it. As a result of the accident, a third party asserted a personal injury claim against Hurip. Dollar subsequently informed Hurip that liability coverage would not be extended to him because he did not have Dollar's permission to operate the U–Drive vehicle as an additional driver.

On June 25, 1990, Dollar filed a complaint for declaratory relief in the Circuit Court of the First Circuit, State of Hawai'i, seeking a determination that it was not obligated to defend or indemnify Hurip in connection with the personal injury claim. On December 19, 1991, Hurip filed a motion for summary judgment, asserting, *inter alia*, that Dollar owed him a duty of defense and indemnification because the Financial Responsibility Law mandates that U–Drive rental businesses provide liability insurance coverage to "any person driving [a U–Drive] vehicle with express or implied permission of the ... customer."[3] In opposition to the motion, Dollar denied any duty to defend or indemnify Hu-

---

1. In addition to its claim on appeal that the regulation of motor vehicle insurance has been preempted by state law, Dollar raises two further issues. First, Dollar contends that Hawai'i Administrative Rules (HAR) § 16–23–21 is invalid because it conflicts with its enabling statute— Hawai'i Revised Statutes (HRS) § 294–37 (1985)—by requiring a self-insured, such as Dollar, "to extend liability [insurance] coverage to *any* person using the self-insured vehicle without regard to whether the person has permission of the insured." Dollar's opening brief at 23–26 (emphasis in original). Second, Dollar urges that its "self-insurer agreement" with the State of Hawai'i, pursuant to HAR § 16–23–21, conflicts with HRS ch. 294 (1985) and is therefore invalid. *Id.* at 26–28. Because we hold that Dollar has a duty to defend and indemnify Hurip pursuant to the Financial Responsibility Law, we need not address whether HAR § 16–23–21 lawfully imposes a similar duty.

2. Honolulu, Haw., Rev. Ordinances § 12–2.2 (1990) defines "U–Drive rental business" to mean "the business of renting or leasing to a customer, as defined in this section, a motor vehicle for a period of six months or less notwithstanding the terms of the rental or lease if in fact the motor vehicle is rented or leased for a period of six months or less." The section defines "customer" in relevant part to mean "any person ... renting or leasing a motor vehicle from an operator of a U–Drive rental business."

3. The Financial Responsibility Law provides in relevant part:

    **Sec. 12–2.7 Evidence of financial responsibility.**

    (a) The director of finance [of the City and County of Honolulu] shall require evidence of financial responsibility in one of the following manners before issuing a license to engage in the U–Drive rental business:

    (1) Insurance Policy. The director of finance shall require [an] original insurance policy ... before a license as provided for herein shall be issued [to the operator of a U–Drive rental business]. *Such policy shall provide for primary liability insurance covering the [U–Drive rental business], customer and any person*

rip, alleging, *inter alia*, that the Financial Responsibility Law was preempted by the then-existing Hawai'i No–Fault Law, Hawai'i Revised Statutes (HRS) ch. 294, pt. I (1985), and contravened public policy because it expanded tort liability beyond that prescribed by the no-fault law.

As noted above, the circuit court entered an order granting Hurip's motion for summary judgment and ruled that Dollar owed Hurip a duty of defense and indemnification.[4] Dollar thereafter filed a timely notice of appeal.

## II. *STANDARD OF REVIEW*

■ "On appeal, an order of summary judgment is reviewed under the same standard applied by the trial courts." *Delos Reyes v. Kuboyama*, 76 Hawai'i 137, 138, 870 P.2d 1281, 1282 (Sup.1994). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Kaapu v. Aloha Tower Dev. Corp.*, 74 Haw. 365, 379, 846 P.2d 882, 888 (1993) (citation and internal quotation marks omitted); Hawai'i Rules of Civil Procedure (HRCP) 56(c) (1990).

## III. *HRS CH. 294 DOES NOT PREEMPT THE FINANCIAL RESPONSIBILITY LAW.*

■ As a general matter, Dollar argues on appeal that the Financial Responsibility Law is "invalid" because it is preempted by HRS ch. 294, pt. I—the Hawai'i No–Fault Law.[5] Dollar's opening brief at 6. Specifically, Dollar contends that the Financial Responsibility Law

is invalid on two grounds: (1) the State [of Hawai'i] has clearly shown an intent that the field of motor vehicle insurance shall be exclusive, or uniform throughout the State[6] and, therefore, the City [and County of Honolulu] is preempted from regulating the same field; and (2) . . . the [Finan-

---

driving the vehicle with express or implied per-*mission of the [operator of the U–Drive rental business] or customer* in the amount of $50,-000.00 because of bodily injury to or death of one person in any accident, and in the amount of $100,000.00 because of bodily injury to or death of two or more persons in any one accident. . . . Such insurance shall provide primary liability coverage, and the insurer shall be absolutely liable thereon up to the policy limits under the same conditions as the insured would be liable to claimants, notwithstanding any provision in the policy, in the contract for rental or lease of the U–Drive vehicle, or in any other agreement to the contrary. . . .

Honolulu, Haw., Rev. Ordinances § 12–2.7 (1990) (emphasis added).

4. At the conclusion of the February 6, 1992 hearing on Hurip's motion for summary judgment, Judge Kurren explained his ruling on the following basis:

. . . [T]he most significant issue, in my judgment, is whether the state statutory scheme of a state no-fault law preempts the entire area here, which would prohibit the City and County [of Honolulu] from legislating specifically with respect to rental vehicles, and it appears, to me that the State has not preempted this area.

I see no reason, when you examine all of the regulations and questions, why the City cannot afford greater protection, and specifically with respect to rental vehicles. That, in my view, is not specifically addressed by the state statute.

And this is actually a very interesting issue[;] I'm sure it's not going to stop here and probably should be addressed by the Supreme Court.

But in my view, [the Financial Responsibility Law] is a legitimate City and County Ordinance considered by the City to require protection and coverage for individuals who are operating with the permission of the customer . . . of Dollar. And based on [the Financial Responsibility Law], I agree with [Hurip] that coverage is required, and the [rental] agreement is in derogation of the responsibility under this particular ordinance, and so I am granting summary judgment to [Hurip] in this case.

2/6/92 Tr. at 18–19.

5. HRS ch. 294 was repealed in 1987, Act 347, § 1, 1987 Haw.Sess.Laws, vol. 2, at 1, and reenacted as HRS ch. 431, art. 10C, Act 347, § 2, 1987 Haw.Sess.Laws, vol. 2, at 148–79. But because the recodification did not become effective until July 1, 1988, Act 347, § 4, 1987 Haw. Sess.Laws, vol. 2, at 342, twenty-six days after the accident, the provisions of HRS ch. 294, pt. I apply to the present appeal.

6. In its effort to demonstrate that the legislature intended "that the field of motor vehicle insurance shall be exclusive [ ] or uniform throughout the [s]tate," Dollar relies on HRS §§ 294–1 and 294–8.

HRS § 294–1 provided in relevant part:

**Purpose.** (a) The purpose of this chapter is to create a system of reparations for accidental

cial Responsibility Law] is inconsistent with, or tends to defeat the intent of the Hawai['']i no-fault law.[7]

Dollar's opening brief at 8.

Both of Dollar's preemption theories are grounded in HRS § 70–105,[8] which provides:

> **Effect on state statutes.** No ordinance [of the City and County of Honolulu] shall be held invalid on the ground that it covers any subject or matter embraced within any statute of the State; provided that the ordinance is not inconsistent with and does not tend to defeat the intent or object of the statute or of any other statute; provided also that the statute does not disclose an express or implied intent that the same shall be exclusive, or uniform throughout the State.

HRS § 70–105 (1985).

We have recently noted that HRS § 70–105, like its successor statute, HRS § 46–

---

[7]. Dollar urges that the Financial Responsibility Law "is inconsistent with [ ] or tends to defeat the intent of" HRS § 294–10, which provided in relevant part:

> **Required policy coverage.** (a) In order to be a no-fault policy, an insurance policy covering a motor vehicle shall provide ... insurance to pay on behalf of the owner or any operator of the insured motor vehicle using the motor vehicle *with the express or implied permission of the named insured,* sums which the owner or operator may legally be liable to pay for injury, death, or damage to property of others ..., which arise out of the ownership, operation, maintenance or use of the motor vehicle:
>
> (1) Liability coverage of not less than $35,000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident[.]

HRS § 294–10 (1985) (emphasis added).

[8]. Prior to 1988, HRS ch. 70, entitled "General provisions relating to Honolulu," was subsumed within HRS Title 6, which was, and remains, the comprehensive statutory scheme governing "county organization and administration." Title 6 was organized into three Subtitles. Subtitle 1, entitled "Provisions common

harm and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents.

> (b) This system of no-fault insurance can only be truly effective, however, if all drivers participate at least to the extent required by law....

HRS § 294–1 (1985).

HRS § 294–8 provided in relevant part:

> **Conditions of operation and registration.** (a)(1) No person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy. Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this chapter and shall maintain the no-fault policy at all times for the entire motor vehicle registration period....

HRS § 294–8 (1985).

to all counties," encompassed HRS chs. 46 through 57. Subtitle 2, entitled "Government of Hawai['']i, Kaua['']i, [and] Maui," encompassed HRS chs. 61 through 67 and addressed matters relating to general organization and power, county officers, and other provisions specific to these three counties. Subtitle 3 was entitled "Honolulu government," related exclusively to the City and County of Honolulu, and consisted solely of HRS ch. 70.

> Effective June 13, 1988, the legislature enacted Act 263, the purpose of which was
>
> to repeal the special or local statutes setting forth the powers of particular counties, and to replace these provisions with grants of general powers which would have uniform operation in all counties of the State ... so that all counties [would] have similar general powers or limitations that supersede currently unnecessary provisions.

Hse.Stand.Comm.Rep. No. 433–88, in 1988 House Journal, at 1006. Put more succinctly, the purpose of the act was "to promote ... uniformity by replacing special and local laws with grants of general powers that apply to all counties." Act 263, § 1, 1988 Haw.Sess.Laws 483. Among other things, Act 263 repealed Subtitles 2 and 3 (and hence HRS ch. 70) of Title 6 and reorganized Subtitle 1. Key to that reorganization was the promulgation of HRS § 46–1.5, which, in effect, enumerated the general powers of the county governments, "subject to general [*i.e.,* state] law."

*Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 59–60, 868 P.2d 1193, 1206–07 (Sup. 1994) (brackets and ellipses in original) (footnotes omitted).

HRS § 46–1.5(13) is the successor to HRS § 70–105. *Id.,* slip op. at 20. As formulated by Act 263, HRS § 46–1.5(13) provided:

> Each county shall have the power to enact ordinances deemed necessary to protect health, life, and property, and preserve the order and security of the county and its inhabitants *on any subject or matter* not inconsistent with, or tending to defeat, the intent of any state statute, provided also that the statute does not disclose or express an implied intent that the statute shall be exclusive or uniform throughout the State.

Act 263, § 2, 1988 Sess.Laws 484 (emphasis added).

1.5(13) (Supp.1992), "was intended [by the legislature] to be a provision mandating the preemption of any ordinance that either conflict[s] with the intent of a state statute or legislate[s] in an area already staked out by the legislature for exclusive and statewide statutory treatment." *Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 60, 868 P.2d 1193, 1207 (Sup.1994).

■ In *Richardson,* we likewise set out "the general principles governing preemption" as follows:

> If otherwise valid local legislation *conflicts* with state law, it is preempted by such law and is void.
>
> A conflict exists if the local legislation *duplicates, contradicts,* or *enters an area fully occupied by general law,* either expressly or by legislative implication.
>
> Local legislation is *"duplicative"* of general law when it is coextensive therewith.
>
> Similarly, local legislation is *"contradictory"* to general law when it is inimical thereto.[9]
>
> Finally, local legislation *enters an area that is "fully occupied" by general law* when the Legislature has expressly manifested its intent to "fully occupy" the area, or when it has impliedly done so. . . .

*Richardson,* 76 Hawai'i at 60–61, 868 P.2d at 1207–08 (quoting *Sherwin–Williams v. City of Los Angeles,* 4 Cal.4th 893, 897–98, 16 Cal.Rptr.2d 215, 217–18, 844 P.2d 534, 536–37 (1993) (emphasis in original)).

*Richardson* also discussed two earlier preemption cases of this court, *In re Application of Anamizu,* 52 Haw. 550, 481 P.2d 116 (1971), and *Citizens Utilities Co. v. County of Kauai,* 72 Haw. 285, 814 P.2d 398 (1991), in which we derived a "comprehensive statutory scheme" test from HRS §§ 70–105 and 46–1.5(13), respectively. *Richardson,* 76 Hawai'i at 61–62, 868 P.2d at 1208–09. In *Anamizu,* "we held that the city ordinance was preempted by the state statutory scheme,

noting that 'the critical determination to be made' under HRS § 70–105 was whether the statutory scheme at issue 'indicate[d] a legislative intention to be the exclusive legislation applicable' " to the relevant subject matter. *Richardson,* 76 Hawai'i at 61, 868 P.2d at 1208 (quoting *Anamizu,* 52 Haw. at 553, 481 P.2d at 118) (brackets in original). In *Citizens Utilities,* "we applied the *Anamizu* test . . . and declared that 'a municipal ordinance, which covers the same subject matter embraced within a [s]tate statute is invalid if the statute discloses an express or implied intent that the same shall be exclusive, or uniform in application throughout the [s]tate.' " *Richardson,* 76 Hawai'i at 62, 868 P.2d at 1209 (quoting *Citizens Utilities,* 72 Haw. at 289, 814 P.2d at 400) (brackets in original).

■ Thus, harmonizing *Sherwin–Williams, Waikiki Resort Hotel, Anamizu,* and *Citizens Utilities,* we held that a municipal ordinance may be preempted pursuant to HRS § 46–1.5(13)—the substantively identical successor to HRS § 70–105 applicable to all counties—if "it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or . . . it conflicts with state law." *Richardson,* 76 Hawai'i at 62, 868 P.2d at 1209. The same principle applies to HRS § 70–105.

### A. The Legislature Intended That HRS Ch. 294 Be "Uniform" But Not "Exclusive" Throughout The State.

Dollar bases its first contention on appeal on the fact that "[i]n upholding the validity of [the Financial Responsibility Law], the [circuit] court held that the State [of Hawai'i] had not preempted the field of motor vehicle insurance relating to rental vehicles." Dollar's opening brief at 7.[10] Dollar urges, however, that HRS ch. 294 "clearly discloses a legislative intent to occupy the entire field of

---

9. A municipal ordinance is "inimical to" a state statute when it "prohibit[s] what the statute commands or command[s] what [the statute] prohibits." *Sherwin–Williams v. City of Los Angeles,* 4 Cal.4th 893, 902, 16 Cal.Rptr.2d 215, 220–21, 844 P.2d 534, 539–40 (1993); *cf. Waikiki Resort Hotel, Inc. v. City and County of Honolulu,* 63 Haw. 222, 241, 624 P.2d 1353, 1366 (1981) ("A test to determine whether an ordinance conflicts with a statute is whether it prohibits what the statute permits or permits what the statute prohibits.").

10. *See supra* note 4 and accompanying text.

motor vehicle insurance" and that, therefore, the circuit court "should have found preemption [ ] and denied Hurip's motion for summary judgment." *Id.* (footnote omitted). In effect, Dollar suggests that the Financial Responsibility Law has "enter[ed] an area that is 'fully occupied' by general law" because "the [l]egislature has expressly manifested its intent to 'fully occupy' the area, or ... has impliedly done so." *Richardson,* 76 Hawai'i at 61, 868 P.2d at 1208; *Sherwin–Williams,* 4 Cal.4th at 897–98, 16 Cal.Rptr.2d at 217–18, 844 P.2d at 536–37 (citation omitted). We disagree.

### 1. *Power to regulate insurance of U–Drive vehicles*

Citing, *inter alia, Anamizu,* 52 Haw. at 553, 481 P.2d at 118, for the proposition that municipal corporations "may exercise only those powers which have been delegated to them by the [s]tate legislature," Dollar maintains as a preliminary matter that HRS ch. 70 does not "confer[ ] upon the City and County of Honolulu ... the power to regulate insurance of U–[D]rive vehicles." Dollar's opening brief at 7 (footnote omitted). Aside from the fact that Dollar failed to raise this issue as an alleged error on appeal, in violation of Hawai'i Rules of Appellate Procedure (HRAP) 28(b)(4) (1993), and, absent plain error, the issue should therefore be disregarded, HRAP 28(b) (1993), Dollar is merely recasting its essential preemption position in another form.

Dollar recognizes that Honolulu, Haw., Rev. Ordinances § 12–2.1 (1990) declared that the legislative intent of the Honolulu city council, in enacting the Financial Responsibility Law, was to foster "the proper protection of the health, life and property of [the city's] inhabitants and [to] preserv[e] ... good government, order and security of the city." Dollar's opening brief at 7–8. Dollar also concedes that HRS § 70–70 (1985) expressly empowered the Honolulu city council to "enact and enforce all ordinances necessary to protect health, life, and property and preserve and enforce the good government, order, and security of the city and county and its inhabitants." *Id.* at 8. Thus, Dollar's

only support for its "delegation" argument is the self-evident fact that HRS § 70–70 "is limited by HRS § 70–105." *Id.* Dollar then argues that, by virtue of HRS § 70–105, the Financial Responsibility Law is preempted by HRS ch. 294. *Id.*

Hence, we come full circle to Dollar's original position—that, in the face of HRS ch. 294, the circuit court "should have found preemption [ ] and denied Hurip's motion for summary judgment." *Id.* at 7 (footnote omitted). For the reasons set forth below, Dollar's argument is without merit.

### 2. *The Financial Responsibility Law does not enter an area that is fully occupied by HRS ch. 294.*

Although HRS ch. 294 was clearly intended to be "comprehensive" and "uniform throughout the state," [11] neither the statute itself nor the relevant legislative history reflects an express or implied intent that the chapter be "exclusive," *i.e.,* that it "fully occupy" the field of motor vehicle liability insurance. *See Sherwin–Williams,* 4 Cal.4th at 897–98, 16 Cal.Rptr.2d at 217–18, 844 P.2d at 535–37.

■ " 'The interpretation of a statute is a question of law reviewable *de novo.* When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature[,] which is to be obtained primarily from the language contained in the statute itself.' " *Richardson,* 76 Hawai'i at 63, 868 P.2d at 1210 (quoting *Franks v. City and County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993)) (internal quotation marks omitted); *see also Kaapu,* 74 Haw. at 387, 846 P.2d at 891 (citations omitted).

Although not explicitly stated, we infer from the language of HRS ch. 294, pt. I that the purpose of the Hawai'i No–Fault Law was to establish a *minimum* level of insurance protection. For example, HRS § 294–1(b) provided in relevant part that "all drivers must participate *at least* to the extent required by law" (emphasis added), and HRS § 294–10 required that no-fault policies pro-

---

11. *See supra* note 6 and accompanying text.

vide "[l]iability coverage of *not less than* $35,000." (Emphasis added.) Additionally, HRS § 294–12(a) (1985) mandated that "[n]o insurer shall issue or offer to issue any policy which the insurer represents is a no-fault policy unless such insurer *meets* the requirements of this part." (Emphasis added.)

■ Assuming *arguendo*, however, that the language of HRS ch. 294, pt. I was ambiguous as to whether its purpose was to set a floor for, or minimum level of, automobile liability insurance protection, we may look to legislative history to ascertain the intent of the legislature in that regard. " 'If ... statutory language is ambiguous or doubt exists as to its meaning, courts may take legislative history into consideration in construing a statute.' " *Kaapu,* 74 Haw. at 387, 846 P.2d at 891 (quoting *Franks,* 74 Haw. at 335, 843 P.2d at 671–72) (brackets and internal quotation marks omitted).

■ Our review of the relevant legislative history underlying the enactment of HRS ch. 294, pt. I persuades us that the Hawai'i No-Fault Law was intended to set a base line, minimum level of automobile liability insurance protection. From the outset, it was the legislature's objective to make "a *basic,* comprehensive, equitable, and reasonably priced auto insurance policy" universally available. Hse.Conf.Comm.Rep. No. 13, in 1973 House Journal, at 1219 (emphasis added); *see also* Hse.Conf.Comm.Rep. No. 28, in 1974 House Journal, at 864 ("[T]he no-fault law will continue to provide a *basic,* comprehensive, equitable and reasonably priced auto insurance premium.") (emphasis added)). Thus, "every car on the road [would] have the *basic minimal* no-fault coverage." Sen. Conf.Comm.Rep. No. 4, in 1973 Senate Journal, at 638 (emphasis added). Recognizing that HRS ch. 294, pt. I sets a threshold level of auto liability insurance coverage, the legislature gave "the insurance buyer ... the option to buy ... additional coverage if he [or she] chooses." *Id.* at 637. And as a member of the conference committee working on the no-fault insurance bill noted on the floor of the House of Representatives, "the bill, as reported from your Conference Committee, provides a no-fault system ... which is an *initial step* towards insurance reform[.]" House Journal—60th Day, in 1973 House Journal, at 698 (emphasis added).

■ Moreover, it is apparent that the legislature did not intend that HRS ch. 294 be the "exclusive" statutory treatment of the scope of auto liability insurance coverage because the legislature declined to repeal HRS ch. 287—the Motor Vehicle Safety Responsibility Act—which protects the public from uninsured motorists. As originally drafted, the Hawai'i No-Fault Law called for the repeal of HRS ch. 287 on the theory that it was "inconsistent with" the enabling legislation, styled "The Hawai['] Motor Vehicle Accident Reparations Act." Act 203, § 4, 1973 Haw.Sess.Laws 381, 400. In 1974, however, the legislature deleted the repeal of HRS ch. 287, *see* Act 168, § 6, 1974 Haw.Sess.Laws. 317, 341, because it deemed the Motor Vehicle Safety Responsibility Act to be "necessary in order to protect the public, both the injured and uninjured, against the uninsured motorist." Hse.Conf.Comm.Rep. No. 28, in 1974 House Journal, at 869. Obviously, if the legislature had intended HRS ch. 294 to "fully occupy" the field of motor vehicle liability insurance, it would not have left HRS ch. 287 intact.

We further note that "this court has used subsequent legislative history or amendments to confirm its interpretation of an earlier statutory provision." *Franks,* 74 Haw. at 340 n. 6, 843 P.2d at 674 n. 6 (citing *Methven–Abreu v. The Hawaiian Ins. & Guar. Co.,* 73 Haw. 385, 393–94 & n. 6, 834 P.2d 279, 284 & n. 6 (1992), and *Mollena v. Fireman's Fund Ins. Co. of Hawai'i, Inc.,* 72 Haw. 314, 324–25, 816 P.2d 968, 973 (1991)); *see also In re Doe, Born on January 5, 1976,* 869 P.2d 1304, 1310 (Haw.1994).

■ In this regard, the legislative history of the 1992 amendment to HRS § 431:10C–301,[12] the successor to

---

12. HRS § 431:10C–301 provides in relevant part:

    **Required motor vehicle policy coverage.** (a) In order to meet the requirements of a no-fault policy as provided in this article, an insurance policy covering a motor vehicle shall provide:

    . . . .

HRS § 294–10,[13] establishes conclusively that the legislature did not intend to preempt municipal ordinances affecting U–Drive rental businesses. The amendment "delet[ed] those provisions requiring personal injury coverage [for anyone operating a rental vehicle with the permission of the renter or lessee]; [and] broaden[ed] property damage coverage to include anyone operating the rental vehicle with the lessee's express permission...." Sen.Conf.Comm.Rep. No. 72, in 1992 Senate Journal, at 763. Significantly, the conference committee report "stresse[d] that the bill [was] *in no way meant to restrict or supersede county ordinances regulating car rental companies.* It is your Committee's *intent that local ordinances affording greater protection or coverage shall continue to apply where enacted.*" *Id.* (emphasis added).[14] We presume that the legislature was aware of the provisions of the Financial Responsibility Law, inasmuch as it was at least one of the "local ordinances affording greater protection or coverage" to which the conference committee report expressly referred.

■ Thus, the relevant legislative history demonstrates that the legislature expressly intended that: (1) the Hawai'i No–Fault Law

afford a basic level of motor vehicle liability insurance statewide; and (2) the various counties have the prerogative to adopt local ordinances requiring "car rental companies," *i.e.,* U–Drive rental businesses, to afford "greater protection or coverage" than that mandated by the Hawai'i No–Fault law.

Accordingly, we hold that the legislature did not intend, expressly or impliedly, to fully occupy the field of motor vehicle liability insurance through the enactment of the Hawai'i No–Fault Law and that HRS ch. 294, pt. I does not preempt the Financial Responsibility Law on that basis.

B. *The Financial Responsibility Law Does Not Conflict With HRS § 294–10 On The Basis That It Is Contradictory Or Inimical Thereto.*

■ Dollar's second preemption argument on appeal is that the Financial Responsibility Law conflicts with HRS ch. 294, pt. I, and in particular HRS § 294–10,[15] because it

> prohibits that which is authorized by the Hawai['i no-fault law (the right to limit coverage to drivers authorized by Dollar only), and ... it imposes an additional burden which is more onerous than the

---

(2) Insurance to pay on behalf of the owner or any operator of the insured motor vehicle using the motor vehicle with the express or implied permission of the named insured, sums which the owner or operator may legally be obligated to pay for injury, death, or damage to property of others ..., which arise out of the ownership, operation, maintenance, or use of the motor vehicle; provided that *in the case of a U-drive motor vehicle,* insurance to pay on behalf of the renter *or any operator* of the insured motor vehicle using the motor vehicle *with the express permission of the renter or lessee,* sums which the renter *or operator* may be legally obligated to pay for damage or destruction of property of others....

HRS § 431:10C–301 (Supp.1992) (emphasis added).

**13.** *See supra* note 7 and accompanying text.

**14.** This legislative history gives the lie to Dollar's argument that the Financial Responsibility Law violates public policy. Dollar's opening brief at 15–17. Dollar's reliance on *Travelers Ins. Co. v. Budget Rent-A-Car Systems, Inc.,* 901 F.2d 765 (9th Cir.1990), in support of its position is misplaced.

In *Travelers,* the liability insurer of a restaurant brought an action against an auto rental company, seeking indemnification for benefits paid to an auto renter who was injured by the auto while it was being handled by the restaurant's parking valet. The United States District Court entered summary judgment in favor of the auto rental company and the Ninth Circuit Court of Appeals affirmed, holding that the company was not required to indemnify the restaurant's insurer.

*Travelers* is inapposite to the present appeal for a number of reasons. First, the primary issue in the case related to the statutory obligation of third-party indemnification as it was affected by the terms of the auto rental company's rental agreement with the auto renter, rather than the question of liability under the Hawai'i No–Fault Law. Second, the question of the preemption of a municipal ordinance by state law was not at issue. Indeed, the events giving rise to *Travelers* took place in the County of Maui, and therefore Honolulu's Financial Responsibility Law was not even theoretically implicated; the Ninth Circuit's decision was silent with regard to whether the County of Maui had enacted an analogous ordinance. Finally, although interesting and often persuasive, federal interpretations of Hawai'i law are not binding on this court.

**15.** *See supra* note 7 and accompanying text.

requirements of the statute (the burden of providing coverage even to a driver using the rental car without the permission of Dollar).

Dollar's opening brief at 20. In other words, Dollar contends that the Financial Responsibility Law "prohibits what the [Hawai'i No-Fault Law] permits," *see Waikiki Resort Hotel*, 63 Haw. at 241, 624 P.2d at 1366, and commands more than the Hawai'i No-Fault Law requires, *cf. Sherwin–Williams*, 4 Cal. 4th at 902, 16 Cal.Rptr.2d at 220–21, 844 P.2d at 539–40.[16] Thus, in substance, Dollar urges that the Financial Responsibility Law conflicts with the Hawai'i No-Fault Law, and in particular HRS § 294–10, because it is "contradictory" or "inimical" thereto. *See Richardson*, 76 Hawai'i at 61, 868 P.2d at 1208; *Sherwin–Williams*, 4 Cal.4th at 902, 16 Cal. Rptr.2d at 220–21, 844 P.2d at 539–40. Again, we disagree.

As we have noted, HRS § 294–10 prescribed the minimum coverage to be afforded to an insured in a no-fault policy. The section, *inter alia*, mandated "[l]iability coverage of not less than $35,000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident" and "of not less than $10,000 for all damages arising out of injury to or destruction of property[.]" HRS §§ 294–10(a)(1) and (2). At a minimum, the policy must cover "the owner or any operator of the insured motor vehicle with the express or implied permission of the named insured." HRS § 294–10(a).

We have already determined in section III.A.2. of this opinion that the Hawai'i No-Fault Law was expressly intended to afford a basic minimum level of motor vehicle liability insurance statewide and that the legislature expressly intended that the various counties continue to have the prerogative to adopt local ordinances requiring U–Drive rental businesses like Dollar to afford greater protection or coverage than that mandated by the Hawai'i No-Fault Law. Our review of the Financial Responsibility Law in section I

of this opinion demonstrates that the ordinance not only meets the threshold level of coverage mandated by the Hawai'i No-Fault Law, *see* Honolulu, Haw., Rev. Ordinances § 12–2.7, but also permissibly affords "greater protection or coverage" than the minimum mandated, *see* Sen.Conf.Comm.Rep. No. 72, in 1992 Senate Journal, at 763. That being the case, we hold that the Financial Responsibility Law is not "contradictory" or "inimical" to the Hawai'i No-Fault Law and therefore is not preempted on the basis that it is in conflict therewith.

### IV. CONCLUSION

Based on the foregoing analysis, we hold that Honolulu, Haw., Rev. Ordinances, § 12–2.7—the Financial Responsibility Law—is not preempted by HRS ch. 294, pt. I. Accordingly, we affirm the circuit court's order granting summary judgment in favor of Hurip and against Dollar and dismissing all of Dollar's claims against Hurip. Thus, pursuant to the Financial Responsibility Law, Dollar is obligated to defend and indemnify Hurip in connection with the personal injury claim.

16. We note that Dollar neither suggests that the Financial Responsibility Law commands what the Hawai'i No-Fault Law "prohibits," *see Sherwin–Williams*, 4 Cal.4th at 902, 16 Cal.Rptr.2d at 220–21, 844 P.2d at 539–40, nor that it merely "permits" what the Hawai'i No-Fault Law prohibits, *see Waikiki Resort Hotel*, 63 Haw. at 241, 624 P.2d at 1353.