909 P.2d 1106

STATE of Hawai'i, Plaintiff–Appellee,

v.

Lawrence Taehyo KWAK,
Defendant–Appellant.

No. 17929.

Supreme Court of Hawai'i.

Sept. 1, 1995.

Keith M. Kiuchi of Kiuchi, Nakamoto & Ahu, on the briefs, Honolulu, for defendant-appellant Lawrence Taehyo Kwak.

Loretta A. Matsunaga, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, Honolulu, for plaintiff-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

This appeal has unearthed and highlighted a striking and material omission in the statutory delineation of district boundaries on the island of O'ahu, which comprises the City and County of Honolulu and the geographic boundary of the first circuit court. By virtue of this omission, we must hold that the State of Hawai'i (the prosecution) failed, as a matter of law, to establish venue in the matter before us.

The defendant-appellant Lawrence Taehyo Kwak has appealed the judgment of the district court of the first circuit, Honolulu division, finding him guilty of driving under the influence of intoxicating liquor (DUI), in violation of Hawai'i Revised Statutes (HRS) § 291-4 (Supp.1992), and crossing longitudinal traffic markings, in violation of HRS § 291C-38 (1985). For the reasons set forth below, we vacate Kwak's convictions and remand for the entry of an order granting Kwak's motion for a judgment of acquittal.

## I. BACKGROUND

At approximately 1:00 a.m. on August 26, 1993, Officer Christine Thomas of the Honolulu Police Department (HPD) observed Kwak driving in the 'Ewa direction on Moanalua freeway as she drove underneath the Ala Kapuna overpass. At the time, Officer Thomas's vehicle was approximately 100 to 150 feet "directly behind" Kwak's vehicle. Officer Thomas testified at trial, which commenced on December 16, 1993, that, when she first saw Kwak's vehicle, Kwak had not

yet reached the Hālawa Prison off-ramp; the off-ramp was "probably 3 times the road down on the right-hand side" from where she initially spotted Kwak.[1] Kwak was "maybe [a] couple hundred feet" past the Red Hill area at that point.

Officer Thomas noticed Kwak's vehicle "aimlessly going over to the right lane with no signal and for no apparent reason" and then "straddle the line and try to get back to the center lane." Kwak did this repeatedly. After noticing the manner in which Kwak was driving, Officer Thomas activated her vehicle's blue lights and pursued Kwak. She eventually stopped Kwak at the Moanalua off-ramp to the H-1 freeway, beyond Moanalua Gardens, Moanalua Valley, and the Red Hill area.

Officer Thomas approached Kwak's vehicle and asked Kwak to open his driver's-side window. After he did so, Officer Thomas noticed "a very strong odor of alcohol of some type." Shortly thereafter, another officer administered a field sobriety test (FST). Eventually, Officer Thomas arrested Kwak based on: (1) the smell of alcohol; (2) Kwak's performance on the FST; and (3) the fact that Kwak was unsteady on his feet.[2]

After the prosecution rested, Kwak orally moved for judgment of acquittal on the ground that the prosecution had failed to prove venue. Kwak argued that the record established that the incident did not occur in the district of Honolulu. The prosecution opposed the motion, contending that Thomas's initial observation and pursuit of Kwak's vehicle had occurred within the district of Honolulu, and asked that the district court take judicial notice that the area just beyond the Ala Kapuna Street overpass was within the Honolulu district.

The district court continued the case until January 11, 1994, pending the submission of additional memoranda by the parties on the

---

1. Officer Thomas testified that, based on her experience and information, the Hālawa Prison off-ramp constitutes a boundary of the district of Honolulu.

2. Both parties stipulated at trial that Kwak was subsequently tested on an intoxilyzer machine, that the machine was operating properly, and that the machine indicated that Kwak's "blood alcohol content" was .222 percent.

issue of venue.[3] At the continued hearing, the prosecution requested that the district court take judicial notice of four certified State tax maps showing that the Ala Kapuna overpass was located within the district of Honolulu. Declining to do so, the district court instead directed that the maps be marked as exhibits and received them in evidence, despite Kwak's objection that the procedure essentially permitted the prosecution to reopen its case. The court explained its ruling as follows:

> The reason I will allow it is that generally venue, although it's an element to the offense [and] must be proven beyond a reasonable doubt ... [,] is not an issue.... I applaud your ... cleverness o[n] this one, and you're—you're absolutely right since it's very close to the—the boundary....
>
> ... I would not allow [the prosecution] to reopen for any other substantive matter. But, I think if—if something that has been assumed to have been well[-]established may not have been, I think I, at least, have to give [the prosecution] the opportunity to show me on the basis of certified public documents that that's the case. So, I appreciate the ... position, but ... I'm gonna allow it simply because it wasn't understood at the beginning of the case that [venue] was the issue.

The district court then examined the maps and found beyond a reasonable doubt that, although Kwak had crossed the boundary out of the district of Honolulu and into the district of 'Ewa, he had, in fact, committed the offenses within the Honolulu district. Accordingly, after hearing argument from counsel, the district court denied Kwak's motion for judgment of acquittal. Kwak thereupon

rested his case without calling any witnesses and renewed his motion for judgment of acquittal. The district court again denied the motion on the basis that it did not have any reasonable doubt as to venue: "Everything in my gut tells me he was in the district. If—if I had a reasonable doubt, I would—I would give it to you. But, I just don't."

Kwak was subsequently convicted of both charged offenses. This appeal followed.

## II. *DISCUSSION*

Kwak does not dispute the sufficiency of the substantive evidence against him. Rather, Kwak grounds his appeal in the contention that the district court erroneously denied his motion for judgment of acquittal at the close of the prosecution's case, pursuant to Hawai'i Rules of Penal Procedure (HRPP) 29(a) (1981),[4] because, as of that time, the prosecution had failed to prove venue beyond a reasonable doubt. Kwak bases his contention on two grounds: first, that his vehicle was clearly outside the district of Honolulu, as defined by HRS § 4-1(3)(A) (Supp.1992), when Officer Thomas first observed it; and, second, that the prosecution failed to adduce evidence that Kwak was within the tax map boundaries of Honolulu. As to the second of these grounds, Kwak asserts that the district court's belated receipt of the tax maps into evidence amounted, in substance, to an impermissible reopening of the prosecution's case.

### A. *Standard of Review*

■ "The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of

---

**3.** On January 6, 1994, the prosecution filed a "motion" to establish venue within the Honolulu district. At the continued trial, Kwak moved to strike the "motion" on the basis that the prosecution could not file a "motion" after having rested its case. The district court denied Kwak's motion, construing the prosecution's "motion" as a "memorandum."

**4.** HRPP 29(a) provides in relevant part:

> **Motion Before Submission to Jury.** Motions for directed verdict are abolished and motions for judgment of acquittal shall be used

in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses....

HRPP 1 provides that the HRPP "shall govern the procedure in the courts of the State in all penal proceedings, with the exceptions stated in Rule 54." The exceptions stated in HRPP 54 are not material to this appeal.

the province of the [trier of fact], a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review."

*State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting *State v. Alston,* 75 Haw. 517, 528, 865 P.2d 157, 164 (1994)) (brackets in original).

B. *The District Court Erred In Denying Kwak's Motion For Judgment Of Acquittal Inasmuch As The Prosecution Failed To Prove Venue.*

1. *The controlling statute is ambiguous under the circumstances of the present case.*

"HRS § 701–114(1)(a) and (b) (1985) requires proof beyond a reasonable doubt of each element of the offense[.]" *Pone,* 78 Hawai'i at 265, 892 P.2d at 458 (citations omitted). In addition, HRS § 701–114(1)(d) (1985) imposes on the prosecution the burden of proof beyond reasonable doubt regarding "[f]acts establishing venue." We have enforced the statutory requirement that venue must be proved beyond reasonable doubt in our case law. *See, e.g., State v. Puaoi,* 78 Hawai'i 185, 189, 891 P.2d 272, 276 (1995) (noting that HRS § 701–114(1)(d) requires that venue be proved beyond reasonable doubt in order to sustain conviction); *State v. Black,* 66 Haw. 530, 668 P.2d 32 (1983) (reversing on ground that prosecution failed to prove element of venue; defendant "had every right to wait until the [prosecution] had presented its case before moving for [judgment of] acquittal"); *see also State v. Miyashiro,* 3 Haw.App. 229, 647 P.2d 302 (holding

that because trial not held in proper district, in violation of constitutional and statutory venue requirements, defendant entitled to judgment of acquittal), *cert. denied,* 65 Haw. 683 (1982).[5]

HRPP 18 (1993) provides in relevant part:

Except as otherwise permitted by statute or by these rules, the prosecution shall be had in the circuit in which the offense or any part of it was committed. If the trial is to be had in the district court, it shall be had in the division, as set out in Schedule A annexed to these rules, in which the offense or any part of it was committed, or if no court is in operation in said division, in the district court designated to serve that division within the same circuit.

Schedule A, annexed to HRPP 18, provides that divisional boundaries are "the districts into which the State is divided . . . and the respective boundaries thereof as set forth in section 4–1 of the Hawai'i Revised Statutes, as amended." In turn, HRS § 4–1 (Supp. 1992) contains a general description of the districts to which HRPP 18 refers. HRS § 4–1 provides in relevant part:

(3) The island of Oahu shall be divided into seven districts as follows:

(A) From Makapuu Head in Maunalua to Moanalua inclusive, and the islands not included in any other district, to be styled the Honolulu district;

(B) Ewa, excluding Waikakalaua, Waipio Acres, and Mililani Town, to be styled the Ewa district[.]

Kwak contends that, based on the statutory definition set forth in HRS § 4–1(3)(A), the prosecution failed to prove that he com-

---

**5.** In *State v. Puaoi,* 78 Hawai'i 185, 891 P.2d 272 (1995), we held that "appellate courts may take judicial notice of venue, provided that the requirements of [Hawai'i Rules of Evidence Rule] 201(b) are met" and that the holding was "consistent with HRS § 701–114(1)(d), which requires only that *facts establishing venue* must be proven beyond a reasonable doubt." 78 Hawai'i at 190, 891 P.2d at 277 (emphasis in original). Accordingly, we took judicial notice of the "adjudicative" fact that the incident giving rise to the appeal had occurred in the Moloka'i district of the second circuit court, because the uncontroverted record established that the incident had occurred on the island of Moloka'i, in front of an

old folks home abutting a highway, the entirety of which was indisputably located within the Moloka'i district of the second judicial circuit. *Id.* at 191, 891 P.2d at 278.

By analogy, had the events material to the matter before us occurred, say, on Kalākaua Avenue in Waikīkī, we could readily take judicial notice of the fact that they had occurred within the Honolulu district of the first judicial circuit. As the analysis set forth in section II.B.1. of this opinion demonstrates, however, proper venue in the present case is not susceptible to judicial notice. Accordingly, *Puaoi,* which we hereby expressly reaffirm, is distinguishable from the matter before us.

mitted the offenses in question within the district of Honolulu. The record indicates that Officer Thomas stopped Kwak beyond both Moanalua Gardens and Moanalua Valley. Presumably, then, given HRS § 4–1(3)(A), Kwak was stopped and arrested outside the boundary of the Honolulu district. This fact, however, is not dispositive of the present appeal because the relevant issue is whether the prosecution established that "the offense[s], *or any part of [them,* were] committed" in the district of Honolulu. HRPP 18 (emphasis added).

■ We note at the outset, in addressing whether the requirements of HRS § 701–114(1)(d) have been met, that penal statutes are to be strictly construed. *State v. Gaylord,* 78 Hawai'i 127, 137–38, 890 P.2d 1167, 1177–78 (1995). Accordingly, in this appeal we must ascertain whether the prosecution adduced "facts establishing venue" beyond a reasonable doubt. Put another way, the relevant question is whether, upon the evidence viewed in the light most favorable to the prosecution, a reasonable mind might fairly conclude beyond a reasonable doubt that Kwak committed the charged offenses within any part of the district of Honolulu. *See Pone,* 78 Hawai'i at 265, 892 P.2d at 458.

■ The relevant question can be answered only if the boundaries of the Honolulu district, as defined in HRS § 4–1(3)(A), can be determined with precision. " 'When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.' " *Pacific Intn'l Services Corp. v. Hurip,* 76 Hawai'i 209, 216, 873 P.2d 88, 95 (1994) (quoting *Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 63, 868 P.2d 1193, 1210, *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994)) (internal brackets omitted). "In other words, the fundamental starting point for statutory interpretation is the language of the statute itself.... And where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." *Richardson,* 76 Hawai'i at 63, 868 P.2d at 1210 (internal brackets and quotation marks omitted).

■ According to HRS § 4–1(3)(A), the district of Honolulu extends "[f]rom Makapuu Head in Maunalua to Moanalua inclusive[.]" On their face, these statutory descriptors are far from "plain and unambiguous." In particular, the statutory definition fails to state precisely where the area known as "Moanalua" begins and ends. As a result, and in the absence of any more particularized geographic boundary line, the statutory term "Moanalua inclusive" becomes increasingly obscure as one approaches and enters that general area of O'ahu known as "Moanalua." Where, as in the present case, the inquiry focuses on the specific section of the Moanalua freeway located between the Ala Kapuna overpass and the Hālawa Prison off-ramp, the statutory descriptors become virtually meaningless.

We note that HRS § 4–1(3) appears to stand alone as the sole legislative pronouncement governing the delineation of district boundaries on O'ahu. The prosecution refers us to no authority that clarifies or supplements the statute, and we have found none. We cannot determine from the authorities cited whether the legislature has either designated maps or other schematics as illustrative in detail of the boundaries that HRS § 4–1(3) purports to identify, on the one hand, or authorized any agency to delineate such boundaries, on the other. Thus, in cases such as this, in which material events occur at locations that virtually straddle the apparent boundary lines separating judicial districts, not only is the language of HRS § 4–1(3) inherently ambiguous, failing as it does to describe .with requisite detail the district boundaries, but, based on our review of the record before us, there appear to be no legislatively authorized schematic instruments that accurately delineate those boundaries. We are therefore left with neither words 'nor official maps demarcating the specific borders between the general areas intended to serve as district boundaries.

Because the language of HRS § 4–1(3)(A) is ambiguous as to the exact boundary delineating the district of Honolulu, we look to the legislative history to ascertain the intent of

the legislature in that regard. *Hurip*, 76 Hawai'i at 217, 873 P.2d at 96. The legislative history underlying HRS § 4–1(3)(A) is, however, silent on the subject.

HRS § 4–1(3)(A) derives from Hawai'i Civil Code § 498 (1895), which provided in relevant part that "[t]he island of Oahu shall be divided into five districts, as follows: 1, From Maunalua to Moanalua, inclusive, to be styled the Honolulu district[.]" Thus, the statutory descriptors purporting to identify the boundaries of the Honolulu district have remained essentially unchanged for a century. While the legislature has subsequently "clarified" the district's eastern boundary by declaring that it consists of "Makapuu Head in Maunalua," the 'Ewa (*i.e.*, western) boundary has remained—unadorned—"Moanalua." Thus, we are confronted in 1995 with a statute that fails clearly to describe the boundaries of the Honolulu district. Moreover, we lack any official map or other schematic that clarifies the statutory ambiguity. We respectfully suggest that the time has come for the legislature to remedy this defect.

### 2. *The prosecution has failed as a matter of law to prove facts establishing venue.*

■ The prosecution argues that it has met its burden of proof beyond a reasonable doubt regarding facts establishing venue. In support of its position, the prosecution offers the following: (1) Officer Thomas testified that she believed Kwak had committed the offenses within the Honolulu district; (2) the trial court received certified tax maps into evidence, showing that the Ala Kapuna overpass falls within the district of Honolulu; and (3) Kwak adduced nothing to controvert the

6. HRE 602 provides in relevant part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."

7. Officer Thomas based her belief that Kwak committed part of the charged offenses in the Honolulu district on (1) her understanding that the Hālawa Prison off-ramp constituted the boundary between the Honolulu and 'Ewa districts and (2) the fact that, when she first observed Kwak, he had not yet reached the Hālawa

evidence produced by the prosecution. The prosecution's arguments, however, merely beg the question for three reasons.

First, Officer Thomas's testimony that the offenses in question occurred within the district of Honolulu does not rise to the level of proof of venue beyond a reasonable doubt. Because the events in question transpired in the immediate vicinity of the apparent boundary line between the Honolulu and 'Ewa districts and in the absence of an official delineation of the boundaries of the Honolulu district, Officer Thomas's testimony is incompetent as a matter of law. Logically, this must be the case because: (1) pursuant to Hawai'i Rules of Evidence (HRE) Rule 602 (Supp.1992),[6] testimony by witnesses must be based on personal knowledge; and (2) personal knowledge of the boundaries of the Honolulu district is impossible to attain where, as in cases such as this, there has been no showing that official district boundaries possessing sufficient specificity exist. Thus, Officer Thomas's testimony, wholly independent of the matter of credibility, is simply not probative regarding venue.[7]

■ Second, and without addressing the propriety of admitting them into evidence after the prosecution had concluded its case,[8] we hold that the State tax maps do not constitute competent proof of "facts establishing venue." The prosecution has failed to establish any relationship between the district boundaries drawn by the certified tax maps and those set forth in HRS § 4–1(3)(A). The absence of any evidence delineating the nature, scope, and applicability of the district boundaries designated in the tax maps renders them irrelevant to the issue of venue.

Prison off-ramp. However, the prosecution has adduced no competent evidence that the Hālawa Prison off-ramp in fact demarcates the boundary between the two districts.

8. Because we vacate Kwak's convictions on other grounds, we need not address his contention that the trial court erroneously received the certified tax maps in evidence after the close of the prosecution's case. We note, however, that if the trial court had granted Kwak's motion for judgment of acquittal at the close of the prosecution's case, as it should have done, the maps would never have been proffered, let alone admitted.

Inasmuch as there has been no showing that the legislature adopted the tax maps as official, schematic illustrations of the boundaries set forth in HRS § 4–1(3), the prosecution could not, as a matter of law, have established such a co-extensive relationship. As the ICA has previously recognized, "[t]he boundaries of the districts within the State of [Hawai'i] are established by section 4–1, Hawai'i Revised Statutes." *Miyashiro,* 3 Haw. App. at 230 n. 1, 647 P.2d at 303 n. 1. Because the tax maps do not represent legislatively authorized schematics of official district boundaries for non-taxation purposes, they cannot be used to establish venue in this appeal.

 Third, the prosecution has asserted that, although "it is the [prosecution's] burden to prove the element of venue beyond a reasonable doubt[, a] lack of countering evidence . . . is relevant to whether a person of reasonable caution could accept the conclusion that the offenses occurred within the Honolulu [d]istrict." We disagree. The prosecution bears the burden of proving venue beyond a reasonable doubt. *See Pone,* 78 Hawai'i at 274, 892 P.2d at 467; *Black, supra.* Treating venue as we would any element of a charged offense, we note that Kwak is not compelled to produce any evidence regarding the venue issue. *See State v. Simpson,* 64 Haw. 363, 371, 641 P.2d 320, 325 (1982) ("[A] criminal defendant is not compelled to present a defense. The defendant may stand pat[,] for the [prosecution] has the burden of proving each and every element of the crime charged beyond a reasonable doubt[.]"). To the contrary, Kwak has "every right to wait until the [prosecution] ha[s] presented its case before moving for acquittal on the grounds that the prosecution ha[s] not proved a necessary element." *Black,* 66 Haw. at 531, 668 P.2d at 34 (citing *Miyashiro, supra* ).

We hold that the prosecution has failed as a matter of law to prove "facts establishing venue" in this case. As a result, and "[e]verything in [the trial court's] gut" notwithstanding, we also hold that no "reasonable mind might fairly conclude guilt beyond a reasonable doubt." Consequently, Kwak was entitled to be acquitted. *See Miyashiro,* 3 Haw.App. at 232, 647 P.2d at 305.

### III. *CONCLUSION*

The ambiguity inherent in HRS § 4–1(3), coupled with the lack of any evidence or authority that our legislature has ever ratified an official map authoritatively demarcating the district boundaries of the island of O'ahu, has far-reaching consequences. Because of the location of the events material to this appeal, it renders the establishment of venue a legal impossibility.

Based on the foregoing, we hold that the prosecution has failed to prove "facts establishing venue" beyond a reasonable doubt. Accordingly, we vacate the judgment of the district court and remand the matter for the entry of an order granting Kwak's motion for judgment of acquittal.